# UNITED STATES *v.* UNITED VERDE COPPER COMPANY.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 68.   Argued December 2, 1904.—Decided January 9, 1905.

An apt and sensibl meaning must be given to words as they are used in a statute and the association of words must be regarded as designed and not as accidental, no\ will a word be considered an intruder if the statute can be construed reasonably without liminating that word.

In the act of June 3, 1878, 20 Stat. 88, c. 150, permitting the use of timber on the public lands for "building, agricultural, mining and other domestic purposes," the word "domestic" is not to be construed as relating solely to household purposes omitting "other" altogether but it applies to the locality to which the statute is directed and gives permission to industries there practiced to use the public timber.

To enlarge or abridge a permission given by Congress to certain specified industries to use the public timber would not be regulation but legislation and under the provisions of the statute of June 3, 1878, 20 Stat. 88, the power given by the Secretary of the Interior to make regulations cannot deprive a domestic industry from using the timber.

THE facts are stated in the opinion.

*Mr. Special Assistant Attorney Marsden C. Burch* for the United States:

Rule 7 is within the authority granted to the Secretary of the Interior by the act of June 3, 1878. *Nor. Pac. R. R. Co.* v. *Lewis,* 162 U. S. 376; *United States* v. *Williams,* 12 Pac. Rep. (Mont.) 851.

This court has recognized the authority of Congress to grant a privilege or license and to clothe an executive officer with the right to grant or refuse or restrict such permission under such rules and regulations as he may see fit to adopt in view of conditions as they exist from time to time. See *Williams* v. *United States,* 138 U. S. 514, 524; *Field* v. *Clark,* 143 U. S. 649,

680, 692; *Caha* v. *United States,* 152 U. S. 211, 218, 220; *In re Kollock,* 165 U. S. 526; *United States* v. *Ormsbee,* 74 Fed. Rep. 207, 209; *United States* v. *City of Moline,* 82 Fed. Rep. 592, 598; *Wilkins* v. *United States,* 96 Fed. Rep. 837, 839, 841; *United States* v. *Dastervignes et al.,* 122 Fed. Rep. 30; *The Cin. Wil. & Z. Railroad Company* v. *Commissioners of Clinton County,* 1 Ohio St. 77, 87; *Lock's Appeal,* 72 Pa. St. 22; P. F. Smith, 491, 498, 499; *Port Royal Mining Company* v. *Hagood et al.,* 2 Law Rep. Ann. 841, 843, 844.

As to the phrase "and for other purposes," see *United States* v. *Mullan Fuel Co.,* 118 Fed. Rep. 663; Cong. Rec., Part 4, 45th Cong., 2d Sess., p. 3328.

The construction of an act of Congress by those charged with its execution should not be disregarded by the judiciary unless the construction be clearly wrong. *United States* v. *Johnston,* 124 U. S. 236; *Heath* v. *Wallace,* 138 U. S. 573; *Hawley* v. *Diller,* 178 U. S. 476. If there be a doubt as to the meaning of Congress the construction given by the Executive Department should control. *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *United States* v. *Hill,* 120 U. S. 169; *United States* v. *Philbrick,* 120 U. S. 52.

"Roasting" ore is not a "mining" purpose. For definition of "smelt" and "mining," see Standard Dictionary; Century Dictionary; *United States* v. *Richmond Mining Co.,* 40 Fed. Rep. 415; 2 Snyder on Mining Law, § 134. See also act of March 3, 1891.

The statute does not plainly indicate the sense in which Congress used the word "domestic." That word appears to have four possible meanings:

(1) Belonging to the house or household and its relations. (2) Addicted or adapted to family life, etc. (3) Tame. (4) Of or pertaining to one's own State or country. It will be conceded that the sense in which Congress used the word is embraced either in No. 1 or No. 4. But the real intention is rendered obscure by the use of the word "other." The specific enumeration, "building, agricultural, and mining," is of no

value whatever if the word "other" means "local," because Congress could easily have said "for *domestic purposes*" without any specific enumeration. We urge upon the court the simple proposition that Congress used the word "domestic" as belonging to the household.

If the real intention of Congress cannot be ascertained from the act itself, or from the meaning of the words used therein, we urge that the character of the act must be considered and the proper rules of construction applied. The statute is permissive. Statutes which grant property privileges are to be construed most strictly in favor of the Government and a use not unequivocally authorized by the language of the act must be excluded. Sutherland, Stat. Const. § 378; *Slidell* v. *Grandjean,* 111 U. S. 412, 437; *Central Transp. Co.* v. *Pullman Co.,* 139 U. S. 24, 49; *United States* v. *Dastervignes,* 118 Fed. Rep. 199; Endlich, § 354.

*Mr. Alfred B. Cruikshank* for appellee:

The acts of defendant come well within the permissive provisions of § 24 of the Act of June 3, 1878, c. 150. The phrase "domestic purposes" means the same as "local purposes" For prior judicial constructions of the word "domestic," see *United States* v. *Richmond Mining Co.,* 40 Fed. Rep. 415; *United States* v. *Copper Queen Con. Mining Co.,* 185 U. S. 495. Roasting ore is a mining purpose within the meaning of the act. See Webster; Encyclopedia Brittanica. The statute is remedial and should be liberally construed in favor of the citizen. See Endlich, § 354.

Rule 7 of the Interior Department did not make defendant's acts unlawful.

The rule is to be interpreted as not including the roasting of ore in its prohibition of smelting. The difference between roasting and smelting is not merely technical but substantial. In smelting a chemical change in the ore itself is produced; in roasting there is no such process or result. Smelting includes fusion; roasting does not. For some of the accepted defini-

tions of smelting and roasting, see Webster, Worcester and Standard Dictionaries.

The regulation of the Secretary is illegal and invalid. Cases cited by the Government are inapplicable both as to meaning of phrase "for other purposes" and as to construction of statute.

MR. JUSTICE. McKENNA delivered the opinion of the court.

Action brought by the United States against the appellee, which we shall call the Copper Company, for the sum of $38,976.75, the value of timber cut and removed from certain unsurveyed mineral land in the Territory of Arizona.

The timber· or wood was alleged to have been cut by one Rafael Lopez, a resident and citizen of Arizona, and amounted to 6,496⅛ cords, of the value of $6 per cord, or the sum of $38,976.75.

·It is alleged that the timber belonged to the United States, and "was used and consumed by the said defendant for the purpose of roasting ore at the United Verde Copper mines, said mines being the property of defendant herein, at Jerome, Yavapai County, Arizona Territory, in violation of the act of Congress of June 3, 1878, 20 Stat. 88, c. 150, and of the rules and regulations of the Secretary of the Interior, promulgated under the authority of said act of Congress."

·The Copper Company demurred to the complaint. The demurrer was sustained. The United States refused to amend, and judgment was entered for the Copper Company. It was affirmed by the Supreme Court of the Territory.

Section 1 of the act of June 3, 1878, upon which the action is based, is as follows:

"That all citizens of the United States and other persons, *bona fide* residents of the State of Colorado or Nevada, or either of the Territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and

permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said States, Territories, or districts of which such citizens or persons may be at the time *bona fide* residents, subject to such rules and regulations as the Secretary of the Interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes: *Provided,* The provisions of this act shall not extend to railroad corporations."

Section 2 makes it the duty of registers and receivers to ascertain whether any timber is being cut in violation of the provisions of the act, and, if so, to notify the Commissioner of the General Land Office thereof.

Section 3 makes violations of the act or of the rules and regulations made by the Secretary of the Interior misdemeanors, punishable by fine, not exceeding $500, "to which may be added imprisonment for any term not exceeding six months."

Among the regulations promulgated by the Secretary of the Interior were the following:

"4. The uses for which the timber may be felled or removed are limited by the wording of the act to 'building, agricultural, mining, or other domestic purposes.'

"5. No timber is permitted to be felled or removed for purposes of sale or traffic, or to manufacture the same into lumber or for any other use whatsoever, except as defined in section 4 of these rules and regulations.

\* \* \* \* \* \* \* \*

"7. No timber is permitted to be used for smelting purposes, smelting being a separate and distinct industry from that of mining.

\* \* \* \* \* \* \* \*

"10. These rules and regulations shall take effect February 15, 1900, and all existing rules and regulations heretofore

prescribed under said act by this department are hereby re-
scinded."

The contention of the United States is that roasting ore is
smelting, and that smelting is not a purpose permitted by the
act of Congress, and is besides forbidden by the regulations of
the Secretary of the Interior.

Roasting ore is defined by the Supreme Court of the Territory
in its opinion as follows:

"It is a matter of common knowledge that in this Territory
the roasting of ore at the mines from which it is taken is ordi-
narily accomplished by piling the ore and the wood mingled
with it in piles in the open air, and by igniting the wood the
fire is communicated to the sulphurous or other combustible
ingredients in the ore, and thus by the heat generated by its
own combustion and that of the wood mingled with it, the
volatile substances are driven off in vapor, smoke, and gases
from the ore thus treated. By this treatment the ores that
are extremely sulphide or highly charged with other volatile
substances are relieved from a large portion thereof, and are
the more readily treated by smelting or other processes of
reduction, and besides require less fluxing material for such
reduction, and are also lighter in weight, and for that reason
when shipped to other points for smelting or further treat-
ment of any kind cost less for freight."

The court distinguished this process from smelting, and
decided that it is, in practice, a part of mining. It is a step,
the court reasoned, in the extraction of the ore from the mine,
and the separation of the ore from the rock enclosing it.
Roasting ore, therefore, is preparation for smelting, but not
smelting, which, according to all of the definitions, is some-
thing more than melting—it is obtaining the metal by heat
and such reagents as develop it. Roasting is done crudely in
the open air by burning wood and ore mingled in a pile. Smelt-
ing is the function of an organized plant. But roasting ore,
regarding the production of metal only is a preliminary step
to smelting, and counsel for the Government makes much of

that circumstance. If this were all that is necessary to consider, the deduction would be easy that wood used for roasting ores is used for smelting purposes.

But the dependence of industries, one upon another, does not make them the same, and the division of labor between them is not as marked in new as in old communities, having a more varied industrial development. Regarding, therefore, the conditions which existed in the mining States and Territories, roasting ore was more naturally a part of mining than of smelting. The assignment, however, is unimportant in the view we take of the statute, and whether roasting ore be considered a part of mining or of smelting, the use of timber for it-has the sanction of the statute.

The statute provides "that all citizens of the United States . . . shall be and are hereby authorized and permitted to fell and remove for building, agricultural, mining, or other *domestic* purposes, any timber . . ." The special enumeration of industries is "building, argicultural, and mining." But the permission of the statute is not confined to these. It extends to "other domestic purposes." The limitation of the other purposes is in the word "domestic."

Counsel for the Government recognizes this, and substitutes for "domestic" the word "household," and contends that the word "other" should be treated as an intruder and eliminated from the statute, and making the latter read that timber may be felled for "building, agricultural, mining or *domestic* purposes." But we are not permitted to take such liberty with the statute, if "domestic" has a meaning consistent with the intentional use of the word "other." It has such meaning. It may relate, it is true, to the household. But, keeping its idea of locality, it may relate to a broader entity than the household. We may properly and accurately speak of domestic manufactures, meaning not those of the household, but those of a county, state or nation, according to the object in contemplation. So in the statute the word "domestic" applies to the locality to which the statute is directed, and

gives permission to the industries there practiced to use the public timber. This definition of "domestic" gives the word an apt and sensible meaning, and we must regard the association of the word "other" with it as designed, not as accidental.

The statute was passed on in *United States* v. *Richmond Mining Co.*, 40 Fed. Rep. 415, in 1889. In that case the United States sued in replevin for 10,000 bushels of charcoal made from wood which was cut on mineral land in the State of Nevada. The Richmond Mining Company was engaged in the business of mining, purchasing and reduction of ores, and bought the charcoal "to be used in the reduction of ores and refining the product thereof." The court held that such use was a domestic purpose within the meaning of the statute. The court said that if reducing ores by melting or furnace process, and refining the bullion, is not properly a part of mining, "it is certainly incident to it, and closely connected with it." The court, however, did not dwell on that point, but put its judgment in favor of the mining company upon the ground that reducing ores was "a domestic industry of the highest importance to the miner and to the public," and was within "the benefits conferred by the statute." It will be observed that the industry which was given the benefits of the statute was more than smelting in the strictest sense, and the decision was acquiesced in for eleven years by the Interior Department. It was a rule of rights and conduct for that time, and its overturn might involve civil liability for acts which were done under the sanction of the statute as judicially construed. We should hesitate, therefore, to reverse that construction, even if it were more doubtful than it is.

But the Government relies on the rules and regulations of the Secretary of the Interior, promulgated under, as it is contended, the authority of the statute since *United States* v. *Richmond Mining Co.* was decided. No. 7 of those regulations provides that "no timber is permitted to be used for smelting purposes, smelting being a separate and distinct industry from that of mining." By this the Secretary of the Interior may

have intended to supersede the ruling in *United States* v. *Richmond Mining Co.*, but to which industry the roasting of ore shall be assigned the Secretary does not say, and the considerations which we have expressed apply as well to the regulation as to the statute. But there is a more absolutely fatal objection to the regulation. The Secretary of the Interior attempts by it to give an authoritative and final construction of the statute. This, we think, is beyond his power. Smelting may be a separate industry from mining, but that does not deprive it of the license given by the statute. As we have already said, the general clause, "*other domestic purposes*" is as much a grant of permission to the industries designated by it to use timber as though they had been especially enumerated, and their rights are as inviolable as the rights of the industries which are enumerated. The industries meant by the general clause may receive indeed limitation from those enumerated; in other words, be limited to the conditions existing in the mining States and Territories when the statute was enacted, but there can be no doubt that smelting has such relation. If rule 7 is valid, the Secretary of the Interior has power to abridge or enlarge the statute at will. If he can define one term, he can another. If he can abridge, he can enlarge. Such power is not regulation; it is legislation. The power of legislation was certainly not intended to be conferred upon the Secretary. Congress has selected the industries to which its license is given, and has entrusted to the Secretary the power to regulate the exercise of the license, not to take it away. There is, undoubtedly, ambiguity in the words expressing that power, but the ambiguity should not be resolved to take from the industries designated by Congress the license given to them or invest the Secretary of the Interior with the power of legislation. The words of the statute are that the felling and use of timber by the industries designated shall be "subject to such rules and regulations as the Secretary of the Interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, *and for other purposes.*"

The ambiguity arises from the words which we have italicized. They express a purpose different from the protection of the timber and undergrowth, but they cannot, we repeat, be extended to grant a power to take from the industries designated, whether by the general clause or the specific enumeration, the permission given by Congress.

*Judgment affirmed.*

Mr. Justice Brown, dissenting.

I am unable to concur in the construction put by the court upon the statute of June 3, 1878. Bearing in mind that the policy of the Government has been to preserve its rapidly diminishing areas of forest lands for the benefit of the whole people, any statute which permits timber to be cut by individuals should be narrowly construed.

In my view, the license given to citizens of the United States and residents of the States and Territories named, "to fell and remove, for building, agricultural, mining or other domestic purposes," timber and trees growing upon the public lands should be confined to timber intended to be used for structural or household purposes, and not be extended so far as to authorize the consumption of timber in manufacturing or other business operations. The word "building" explains itself. "Agriculture" would include timber used for houses, barns, tools, furniture and fences. The word "mining" was doubtless intended to include not only the buildings necessary for mining operations, but such timber as is used in shoring up the walls of the mine, and perhaps also in operating the hoisting engines, but not that used for consumption in the treatment of ores.

It is true the words "other domestic purposes" are susceptible of two constructions. The word "domestic," when used in connection with the words commerce, manufactures or industries, is significant of locality, and is contradistinguished from foreign, but when used in connection with the

word "purposes" it is most nearly analogous to "household." The difficulty with the former construction is that it practically liberates the word from all restrictions. If it be construed as referring to locality, what is the locality to which it should be confined? Is it the immediate neighborhood, township, county or State, or may it be given the same construction as given to it in connection with the words commerce or manufacturing, and be extended to the whole United States? If either of these constructions were possible, it would result in the destruction of all timber standing upon public mineral lands, as well as in an unfair discrimination against those less favorably situated, who are compelled to pay for the fuel consumed in the treatment of ores. I do not think the word "other" can be used as an enlargement of the word "domestic," and that it should be confined, as are the preceding words, to timber used for other analogous structural purposes and for household consumption—in short, to other purposes domestic in their character.

For these reasons I am constrained to dissent from the opinion of the court.

I am authorized to state that Mr. JUSTICE HARLAN and Mr. JUSTICE PECKHAM concur in this dissent.