## COMMISSIONER OF INTERNAL REVENUE v. STEVENS.

### No. 382.

**Circuit Court of Appeals, Second Circuit.**

**June 24, 1935.**

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., for petitioner.

J. Nelson Anderson, of Washington, D. C., for respondent.

Lawrence R. Condon, of New York City, for executors Walters and Warshauer.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The respondent was a member of the stock brokerage firm of Stevens & Legg. There were seven partners, six of whom were members of the stock exchange. Respondent claimed, and the Board of Tax Appeals agreed, that they were dealers in securities, and, as such, were permitted to inventory, at market value, their unsold securities on hand for the calendar years 1929 and 1930 in computing their net income for those years. Revenue Act of 1928, c. 852, 45 Stat. 791 (26 USCA § 2001 et seq.).

The Act provides: "Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." Revenue Act 1928, § 22 (c), 26 USCA § 2022 (c).

Treasury Regulation 74, art. 105, provides: "A dealer in securities, who in his books of account, regularly inventories unsold securities on hand either—(a) at cost, (b) at cost or market, whichever is lower; or (c) at market value, may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers * * *. Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities are not dealers in securities * * *."

The Board of Tax Appeals found that the respondent's firm was a dealer in securities within the purview of the statute. We think this finding has evidence in its support. They did a brokerage business and acted as dealers in securities. In 1929, and 1930, they bought and sold stocks of fourteen different corporations, including stock of the New York Dock Company of which it sold more shares than of any other corporate securities. Recently we consid-

ered the question in Seeley v. Commissioner, 77 F.(2d) 323, where the taxpayer was a floor trader on the stock exchange, having no personal customers. We said Seeley was a broker, not buying for himself but for customers of a firm with which he was associated, and he did not sell to those customers but for them. We held he was not a dealer. He had no established place of business; no personal customers; never bought securities as stock in trade to be thereafter resold to customers. He was denied the benefits of this statute.

The dealings of the respondent's firm may not be said to be speculative only. The firm held at all times large blocks of stock which it sold in small lots to its various customers, numbering at least one hundred, at different times, and it sold at different prices. It bought additional blocks of stock with which to replenish its supply. At all times it had shares of the stock to be sold for profit or loss, as the case may be, on resale. This was its wares or stock in trade. While Seeley was a speculator, or trader, in the sense of speculation, this firm, as merchants, bought stock to keep on sale for its customers' supply and demand. The record discloses that the firm bought in these taxable years the stocks of fourteen different corporations, as referred to, for its own account, as distinguished from its purchasers' accounts. All their purchases were intended for resale at a profit.

The fact that it did more buying and selling in New York Dock Corporation stock did not change the character of its business. They were the dominant factors and consultants in this corporation's stock, but bought and sold, as well, for customers. Their sales were large; their supply equally large. As such, they were dealers within the statute. Harriman Nat. Bank v. Com'r, 43 F.(2d) 950 (C. C. A. 2).

Another broker may well be considered a customer. Indeed, unless the firm was a dealer in securities, members of the stock exchange who purchased securities from it, and who were its customers, could have bought the stock in the open market instead of buying from them. A "specialist" is referred to in the record as one who receives orders on the stock exchange in the stock in which he specializes. If the market goes up or down and orders become executed, the specialist executes the orders which he has on his book as a broker.

This firm had a regular place of business; they kept books of account on an accrual basis, showing their inventories. They accrued items of income not actually received, but which they expected to receive, and charged expense items which had been accrued but not actually paid. In filing their income tax return for 1929 and 1930, they employed the same basis as was used in their bookkeeping. In computing net income on their returns, they returned the securities on hand at market prices. All their securities, owned and carried on their books, were inventoried by the same method. This had been the method which had been consistently employed for years past. It was found to be the best accounting practice to employ showing the financial position of the taxpayer including their inventories. The firm was a merchandiser of securities, and, as such, complied with the requirements of the regulation so as to entitle the firm to the use of inventories.

The claim that the firm did not comply with the Commissioner's regulations, in that it failed to include in or attach to its returns a description of the method of accounting employed, is without merit. Respondent substantially complied with Article 105, Reg. 74. The Board found that the firm's books of account recorded the securities regularly inventoried at market. Unsold securities on hand at the end of each year, not only in the taxable years, but in the years prior to and subsequent thereto, were computed to determine net income for tax purposes on the same basis. As dealers they were entitled to inventory unsold securities at market prices despite the failure to note on its return a description of the method employed by it in keeping its books or valuing its inventories. Congress did not vest the Commissioner with powers by administrative requirement to deprive dealers of the right to use inventories which are necessary to clearly determine its income where, as here, the actual method employed conformed, as nearly as possible, to the best accounting practice in the trade and most clearly reflected income, and where there has been a substantial compliance with the statute and regulations. United States v. United Verde Copper Co., 196 U. S. 207, 25 S. Ct. 222, 49 L. Ed. 449; In re Clicquot Club Co. v. United States (D. C.) 13 F.(2d) 655.

Decision affirmed.