UNITED STATES v. CENTRAL PACKING CORPORATION et al.

SAME v. M. H. NAGLE, Inc., et al.

SAME v. KORN et al.

SAME v. BLUE RIBBON PROVISIONS, Inc., et al.

SAME v. INTER-CITY PROVISION CORPORATION et al.

Crim. Nos. 39066, 39067, 39070, 39065, 39069.

District Court, E. D. New York.

Sept. 13, 1943.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Maurice Z. Bungard, Asst. U. S. Atty., of New York City, and Mario Pittoni, Asst. U. S. Atty., of Lynbrook, N. Y., of counsel), for the Government.

Lazansky, Callaghan, Stout & Nova, of New York City (Edward Lazansky, and Thomas A. Gaffney, both of New York City, of counsel), for defendants Central Packing Corporation et al.

Dorsey, Adams & Walker, of New York City (F. W. H. Adams and Morgan J. Burke, both of New York City, of counsel), for defendants M. H. Nagle, Inc., Louis Gerber, et al.

Kaufman & Cronan, of New York City (Milton S. Gould and Norman C. Horowitz, both of New York City, of counsel), for defendants Blue Ribbon Provisions, Inc., et al.

Breed, Abbott & Morgan, of New York City (Thornton C. Land and Stoddard B. Colby, both of New York City, of counsel), for defendants Korn.

Kaufman & Cronan, of New York City (Milton S. Gould and Norman C. Horowitz, both of New York City, of counsel), for defendants, Inter-City Provision Corporation, Hyman Estern, et al.

GALSTON, District Judge.

Essentially similar motions are made in these proceedings to quash the Information in each case, in support of pleas in abatement, and for a hearing before a jury to determine whether a certain regulation of the Price Administrator is void and the issuance thereof a nullity.

In each case the charge is that the defendants unlawfully sold a quantity of beef, or wholesale cuts, at prices higher than the maximum price established for such commodity by the revised Maximum Price Regulation, No. 169, issued by the Office of Price Administration, pursuant to the provisions of Secs. 4(a), 205(b) and 206, Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901 et seq.

Supporting the application in the Nagle case is an affidavit of F. W. H. Adams, an attorney who appears for the defendants in that proceeding, from which it appears that the defendants seek to prove that the maximum prices fixed by Regulation No. 169 are not generally fair or equitable, and do not effect the purposes of the Price Control Act; that the maximum prices so fixed do not allow any margin whatsoever for processing of beef; that in fixing the prices for dressed beef and wholesale cuts, under the aforesaid regulation, the Administrator

gave no consideration to a generally fair and equitable margin for processing as required by the amendment to the Price Control Act of October 2, 1942, 50 U.S.C.A. Appendix § 963.

The Adams affidavit alleges that Regulation No. 169 fixes the following prices per 100 lbs. for the following grades of dressed beef in this zone:

| AA | A | B | C |
|---|---|---|---|
| $23.50 | 22.50 | 20.50 | 18.50 |

and that those prices, according to the Administrator's statement of considerations involved in the issuance of Regulation No. 169, were based on the following average live cattle costs at Chicago of the following grades:

| AA | A | B | C |
|---|---|---|---|
| $15.80 | 14.50 | 12.70 | 10.80 |

It is alleged that actually the prices for live cattle at Chicago at the time of the issuance of Regulation No. 169 were higher than the arbitrary prices selected by the Administrator, and moreover that such prices have consistently risen since the issuance of that regulation. There is included in the affidavit a table which shows that the cost of such live cattle at Chicago during the period from December 12, 1942 through May 14, 1943, dressed to the slaughterer in New York after processing, and including all reasonable and allowable costs and credits, is actually in excess of costs over maximum prices under the regulation as follows, for each of the four grades, all figures per hundredweight:

| Grade | Average Live Cost | Cost in N. Y. dressed, over costs & grades | Maximum price under Reg. 169 | Excess of Cost after Processing over maximum price |
|---|---|---|---|---|
| AA | $17.02 | $28.58 | $23.50 | $5.08 |
| A | 16.18 | 28.26 | 22.50 | 5.76 |
| B | 14.44 | 26.99 | 20.50 | 6.49 |
| C | 12.65 | 25.45 | 18.50 | 6.95 |

It is contended that the foregoing are provable facts and that in consequence, since no fair and equitable margin was allowed to the defendants as processors, the action of the Administrator was capricious and arbitrary and that the regulation is illegal and void. It is also contended that the defendants have the right, and that this court has the jurisdiction, to determine by jury trial whether any valid regulation in fact exists. It is argued that the matter is not one of administrative error in judgment in arriving at a conclusion within the frame-work of statutory authority, but that it is an instance in which the Administrator has seen fit to disregard the statute. Reliance is had on United States v. United Verde Copper Co., 196 U.S. 207, 25 S.Ct. 222, 49 L.Ed. 449; United States v. George, 228 U.S. 14, at page 22, 33 S.Ct. 412, at page 415, 57 L.Ed. 712; United States v. Eaton, 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591.

The basic question presented is whether this court has jurisdiction to pass upon the legality of the regulation in question.

The Emergency Price Control Act of 1942 was enacted Jan. 30, 1942. Its purposes, including the time limit and applicability, are defined in 50 U.S.C.A.Appendix § 901. It is therein said:

"(a) It is hereby declared to be in the interest of the national defense * * * necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices * * *; to eliminate and prevent profiteering, hoarding, manipulation * * * resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, * * * from undue impairment of their standard of living * * *.

"(b) The provisions of this Act * * * shall terminate on June 30, 1944 * * *."

Sec. 921 of the Act relates to administration and creates the Office of Price Administration, and empowers the Administrator, as provided in subdivision (d) thereof, from time to time, to issue such regulations and orders as he may deem necessary or proper to carry out the purposes and provisions of the Act.

Sec. 923 governs procedure and has direct bearing on the question submitted by this application. It is therein provided that:

"(a) Within a period of sixty days after the issuance of any regulation or order under Sec. 902 of the Act, or in the case of a price schedule, within a period of sixty days after the effective date thereof specified in Sec. 926 of this Appendix, any person subject to any provision of such regulation, order, or price schedule may, in accordance with regulations to be prescribed by the Administrator, file a protest specifically setting forth objections to any such provision and affidavits or other written evidence in support of such objections. At any time after the expiration of such sixty days, any persons subject to any provision of such regulation, order, or price schedule may file such a protest based solely on grounds arising after the expiration of such sixty days. * * * Within a reasonable time after the filing of any protest * * * but in no event more than thirty days after such filing or ninety days after the issuance of the regulation or order * * * the Administrator shall either grant or deny such protest in whole or in part, notice such protest for hearing, or provide an opportunity to present further evidence in connection therewith. In the event that the Administrator denies any such protest in whole or in part, he shall inform the protestant of the grounds upon which such decision is based, and of any economic data and other facts of which the Administrator has taken official notice."

Sec. 924 of the Emergency Act, 50 U.S.C.A.Appendix, is likewise important in the consideration of the merits of this application, for it provides for a review of the decision of the Administrator. In part the section recites:

"(a) Any person who is aggrieved by the denial or partial denial of his protest may, within thirty days * * * file a complaint with the Emergency Court of Appeals, created pursuant to subsection (c), specifying his objections and praying that the regulation, order * * * be enjoined. * * * Upon the filing of such complaint the court shall have exclusive jurisdiction to set aside such regulation, order, or price schedule, in whole or in part, to dismiss the complaint, or to remand the proceeding: * * *

"(b) No such regulation * * * shall be enjoined * * * unless the complainant establishes to the satisfaction of the court that the regulation * * * is not in accordance with law, or is arbitrary or capricious. * * *

"(c) There is hereby created a court of the United States to be known as the Emergency Court of Appeals. * * * The court shall have the powers of a district court with respect to the jurisdiction conferred on it by this Act; except that the court shall not have power to issue any temporary restraining order * * *. The Court shall exercise its powers and prescribe rules governing its procedure. * * *

"(d) Within thirty days after entry of a judgment * * * a petition for a writ of certiorari may be filed in the Supreme Court of the United States," etc.

Section 925, 50 U.S.C.A.Appendix relates to enforcement, and subdivision (b) provides that any person who wilfully violates the provisions of Sec. 904 shall upon conviction be subject to a fine of not more than $5,000, or to imprisonment, and states: "Whenever the Administrator has reason to believe that any person is liable to punishment under this subsection, he may certify the facts to the Attorney General, who may, in his discretion, cause appropriate proceedings to be brought."

Subdivision (c) gives the District Courts jurisdiction of criminal proceedings for violations of Sec. 904 of this Appendix and provides: "Such criminal proceedings may be brought in any district in which any part of any act or transaction constituting the violation occurred."

The first question then that suggests itself after a reading of the Emergency Price Control Act is whether this court has jurisdiction to review the order of the Administrator, either independently or with the aid of a jury. It is urged by the defendants that the rule requiring previous exhaustion of administrative remedies presents no obstacle. But the argument fails to recognize the limited jurisdiction which attaches to United States District Courts. They are inferior courts and are vested with such jurisdiction only as has been conferred upon them by the Congress. Certainly the Act in question gives no expressed authority to the District Courts to review the acts of the Administrator. On the contrary, exclusive review is explicitly conferred upon the Emergency Court.

Both the Government and the defendants cite Lockerty et al. v. Phillips, 63 S.Ct. 1019, 1023, 87 L.Ed. ——, U. S. Supreme Court opinion filed May 10, 1943. There the jurisdiction of the District Court

to enjoin enforcement of price regulations was questioned. The appellants did not protest the price regulation which they challenged, and took no proceedings for review by the Emergency Court. So the court was not required to consider anything other than the authority of Congress to require that a plaintiff seeking equitable relief resort to the Emergency Court. The Court said: "A construction of the statute which would deny all opportunity for judicial determination of an asserted constitutional right is not to be favored. The present Act has at least saved to the Emergency Court, and, upon review of its decisions, to this Court, authority to determine whether any regulation, order, or price schedule promulgated under the Act is 'not in accordance with law, or is arbitrary or capricious'. We think it plain that orders and regulations involving an unconstitutional application of the statute are 'not in accordance with law' within the meaning of this clause, and that the constitutional validity of the Act and of orders and regulations under it, may be determined upon the prescribed review in the Emergency Court."

So here any question which is sought to be raised attacking the validity of Regulation No. 169 could have been presented to and reviewed by the Emergency Court of Appeals; and indeed should have been so reviewed, even though it was said in Lockerty et al. v. Phillips that: "We have no occasion to determine now whether, or to what extent, appellants may challenge the constitutionality of the Act or the Regulation in courts other than the Emergency Court, either by way of defense to a criminal prosecution, or * * *."

The constitutionality of the Emergency Price Control Act as falling within the War power of the Congress, Constitution, Art. 1, Sec. 8, Clause 11, has been upheld in a number of cases, United States v. C. Thomas Stores, Inc., D.C., 49 F.Supp. 111; United States v. Hark, D.C., 49 F. Supp. 95; United States v. Slobodkin, D.C., 48 F.Supp. 913; Henderson v. Kimmel, D. C., 47 F.Supp. 635. And it is not seriously contended by any of these defendants that the Act is unconstitutional. In Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 91, 87 L.Ed. ——, Mr. Justice Jackson, disposing of the challenge that the marketing penalty imposed by the amendment of May 26, 1941 to the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281 et seq., was a deprivation of property without due process of law

contrary to the Fifth Amendment, observed that: "An Act of Congress is not to be refused application by the courts as arbitrary and capricious and forbidden by the Due Process Clause merely because it is deemed in a particular case to work an inequitable result." The attack here is rather on the validity of the regulation and the resultant question is whether such attack can be urged here as a defense to the Information.

Undoubtedly such power could be exercised in this proceeding if the right to do so had not been implicitly or expressly withdrawn from the jurisdiction of the district courts. The statute recites that upon the filing of a complaint by a party aggrieved, the Emergency Court "shall have exclusive jurisdiction to set aside such regulation" and more particularly Sec. 924, that: "No such regulation * * * shall be enjoined * * * unless the complainant establishes to the satisfaction of the court that the regulation * * * is not in accordance with law, or is arbitrary or capicious."

If Congress had intended the District Court to have the asserted power, it is difficult to see why the Congress set up the Emergency Court for such specific purpose. As the statute stands, the alleged invalidity of the O. P. A. regulation cannot be set up as a defense, unless indeed illegality appeared within the frame of the regulation. See a recent decision of the First Circuit Court of Appeals, Yakus v. United States, 137 F.2d 850.

Nor can it be argued that the defendants have been denied "due process" under the Constitution by failing to confer such jurisdiction on the district court. The statute, as has been shown, clearly defines the administrative and judicial processes which were available to the defendants. They elected not to pursue either. Also they were privileged to withhold their commodities from the market. They were under no legal compulsion to sell. Contrariwise, their decision was to treat the Administrator's order as a nullity on the ground that it was neither fair nor reasonable, i. e., arbitrary and capricious. Thus they invited criminal prosecution. Of what rights then have these defendants been deprived without due process of law? The statute meticulously endeavored to preserve the rights of all effected by the "judgment" and consequent order of the Administrator too. In Opp Cotton Mills v. Administrator, 312 U.S. 126, at page 153,

657, 61 S.Ct. 524, at page 536, 81 L.Ed. 624, it was said: "The demands of due process do not require a hearing at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective."

■ Assuming the judgment of the Administrator were but erroneous on its face, it would not follow that it was an exercise of power beyond that conferred by the statute. Yakus v. United States, supra. The defendants, by their conduct in violating the order, substitute their judgment for that of the Administrator and indeed in effect foreclose the Emergency Court and the United States Supreme Court from passing on the very question they raise, i. e. the fairness and reasonableness of the order.

Thus by every fair standard of due process, for violation of the order the defendants rendered themselves liable to criminal proceedings, 50 U.S.C.A.Appendix § 925, subdivision (b). There is thus posited the doctrine of exhaustion not only of administrative but also of judicial remedies. The case here is thus far stronger against the relief sought than the matter considered in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, wherein the doctrine of the exhaustion of administrative remedy was approved.

■ Moreover, their plea in abatement and motion for a jury trial of this very issue, before trial of the Information, would substitute a jury's idea of public policy for that of the Congress. Florida Fruit & Produce, Inc., et al. v. United States, 5 Cir., 117 F.2d 506. Were juries throughout the country to weigh and determine the issue sought to be presented by this motion, there indeed might well result a "riot" of decision. The Congress has provided against such contingency. The matter as presented by this statute, the Administrator's order and the moving papers, does not involve the bald question whether courts "must defer to the rulings of an administrative tribunal" to use Judge Learned Hand's phrase in Niagara Falls Power Co. v. Federal Power Commission, 2 Cir., 137 F.2d 787, for the Emergency Court is given the express power to explore such rulings. Nor yet can it be said that the administrative finding under a constitutional statute unlawfully deprives the defendants of the right of trial by jury of the fact so determined. See Harvard Law Review, Vol. 56, No. 2, page 282.

■ The defendants are not deprived of a trial by jury of the criminal charge; nor are they barred from offering any evidence which tends to support their pleas of not guilty. Nor by this decision are they to be prejudiced from showing at the trial that the Informations were filed in any of these proceedings before the expiration of the statutory period within which they were privileged to protest to the Administrator or file complaints in the Emergency Court, for such action by the Administrator might well be considered as depriving the defendants of due process of law.

■ Nor in these proceedings are the defendants to be foreclosed from establishing, if their proof goes so far, that the Administrator failed to act on protests duly presented, and caused this Information to be filed without having acted on such protest. In other words, any effort to thwart the protestant in his effort to seek a review of the Emergency Court of Appeals may be considered as an arbitrary or capricious act. That, however, does not entitle the defendant to the trial of that issue prior to a trial of the Information. It is for these reasons that the applications must be denied.