HERGET, Judge.
The sole issue presented by this appeal is a determination of whether the Trial Court erred in holding the Commissioner of Agriculture and Immigration exceeded his authority in regulating the price of milk sold by processors who have been in business less than twelve months.
The facts on which the rule are predicated are: (1) On March 1, 1960 Smith Milk Company, Incorporated, Plaintiff herein, began the operation of processing and selling milk wholesale to stores in the New Orleans area. (2) On April 28, 1960 David R. Daniel, Chief, Division of Milk Testing, Louisiana Department of Agriculture and Immigration, ordered Plaintiff to attend a hearing as to Plaintiff’s pux-ported failure to comply with the provisions of the Orderly Milk Marketing Act (193 of 1958, LSA-R.S. 40:940.1 et seq.) and Section 7 of the regulations promulgated by the Commissioner in an apparent discharge of his obligation to adopt such other rules, regulations and orders necessary or appropriate to enforce the provisions of the Act.
Following the hearing it was concluded the Plaintiff was violating the Act and the regulation of the Commissioner, and Plaintiff was ordered to raise its prices by July 26, 1960. Plaintiff obtained a temporary restraining order and, after trial, a permanent injunction was issued prohibiting Defendant Commissioner from ordering Plaintiff to raise its prices. It is from this order Defendant brings this appeal.
For many years the milk industry in this State and elsewhere has been fraught with disruptive sales practices or “Milk Wars” in which those distributors of milk who were able to withstand the cost of underselling their competitors were thereby able to cause business failures and eventual elimination from competition in the industry.
The United States Supreme Court in the decision of Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940—upon concluding public interest required the fixing of minimum prices of milk by the legislature so as to prevent unrestricted competition, produce waste harmful to the public or portend the destruction, of the industry itself — held that such fixing of minimum prices by the legislature did not violate the due process clause of the Fourteenth Amendment of the Constitution of the United States.
In 1958 the legislature of Louisiana passed the Orderly Milk Marketing Act (193 of 1958, LSA-R.S. 40:940) and its purpose is delineated in the preamble:
“Whereas it is the intent of the Legislature to prevent the economic destruction of many dairy farmers, dairy plants, ice cream dealers and resale merchants as a result of discriminatory trade practices by certain business organizations financially strong enough to-sell below their own costs for an extended period of time, which presents a situation detrimental to the health, welfare and economy of the people of this state.” (Emphasis ours.)
Under LSA-R.S. 40:940.12 the Commissioner was authorized to administer the Act and to promulgate rules and regulations to effectuate the purpose. The term “cost” is defined in LSA-R.S. 40:940.2, sub-section 12, reading in part, as follows:
“(12) The term 'cost to each processor, handler, distributor, bulk milk handler, or non-processing retailer,’ hereinafter referred to as 'cost,’ shall include the cost of milk, or milk products * * * plus the cost of doing business by each processor, handler, distributor, bulk milk handler, or non-processing retailer, which costs of doing business shall include but not be limited to, labor costs (including salaries of executives and officers), cost of receiving, cooling, processing, packaging, manufacturing, rent, depreciation, power, supplies, selling costs, delivery costs, storing, maintenance of plant and equipment, advertising, transportation, all types of licenses, taxes, *527 fees, insurance, and all other costs of doing business as determined by the commissioner. * * * ” (Emphasis ours.)
In an effort to carry out the authority vested in him by the legislature, the Commissioner promulgated the Orderly Milk Marketing regulation and in Section 7 of the regulation enacted that the cost for milk products for processors and handlers would be based on the average cost to the processor during the previous twelve months; and further provided in case a processor or handler who had been doing business for less than twelve months and in consequence unable to compute an average of a year’s period, his price should not be less than the lowest price within his trade area. Counsel for the Commissioner gave as a reason for the twelve months’ period as a basis for the computation of the cost the fluctuation in various costs in the milk business during a given year, thereby eliminating seasonal changes, and formulating a price that would be consistent through the year.
Appellee does not question the authority of the Commissioner to make such a regulation, but is offended by that part of the regulation which fixes the cost at which it may sell its products, not the cost of its own operation but the cost of the lowest price within its trade area. It is obvious at the inception or opening of a business there would be no previous twelve months’ experience on which the cost to the processor might be determined, and it was for this reason the Commissioner adopted the rule providing that as to such beginner the cost price would be that of the lowest price within his trade area. Thus, as to the beginner, the cost was not to be his cost as provided in the Act, but on the lowest price within his trade area. Salutary as may have been the Commissioner’s intention in enacting this rule, the Commissioner, in our opinion, exceeded the delegated authority granted to him by the legislature by this proviso. Though the Commissioner maintains the purpose and reason for the regulation was to enable a processor without a twelve months’ period of equalization cost the right to sell milk at the lowest price in the area to afford him an opportunity to compete with other processors in his area, the Plaintiff maintains its costs were lower than any other costs in the trade area. Therefore the regulation of the Commissioner deprived Plaintiff of the right of obtaining cost as fixed in the Act of the legislature, and in this respect the Commissioner exceeded the authority delegated to him by the legislature.
We do not know whether Plaintiff’s situation' — that of maintaining low costs at the commencement of business — is unique or not, although we are inclined to think if so it is uncommon considering the Commissioner’s avowed purpose in adopting the regulation and his seemingly sympathetic attitude toward the beginner in business. We are not called upon to determine that question, for the crux of the matter and the sole issue before us is whether the Commissioner exceeded the authority delegated to him by the legislature in promulgating that part of the regulation providing the cost of the beginner should be the cost of the lowest price within his trade area.
Furthermore, we are not concerned with the Commissioner’s arguments pertaining to the right of the legislature to regulate private business, as the constitutionality of the Act is not at issue. Appellee is not contesting the authority of the legislature to fix prices nor is it questioning the right of the legislature to delegate authority. These issues were settled in Schwegmann Brothers Giant Super Markets v. McCrory, 237 La. 768, 112 So.2d 606. Plaintiff is attacking that part of the regulation promulgated by the Defendant which it contends changes the Act itself insofar as it concerns the price to be charged by it for its milk.
It is true the Commissioner was given authority to administer the provisions of the Act and to execute the legislative intent expressed therein. He was vested with power to conduct public, hearings and to *528 promulgate and administer regulations pertaining to the purchase and sale of milk products, and to adopt such other rules, regulations and orders “necessary or appropriate to enforce the provisions of this Sub-part and not inconsistent with the laws of the state of Louisiana.” LSA-R.S. 40:940.-12. The intent of the legislature was to establish a minimum price for milk based on the cost to the processor. The Commissioner, on the other hand, in that portion of the regulation referred to relative to beginners, established the price of milk that could be charged by the beginner on the basis of the price of another processor. That part of the Commissioner’s regulation in using the price of other processors to fix the cost at which Plaintiff might sell its milk is contra to the express provisions of the statute. The minimum price for which a processor may sell his milk is set forth in the Act and nowhere therein is the Commissioner delegated the authority to fix prices, so that, regardless of the reasonableness of the rule promulgated by the Commissioner, where such rule or regulation is contra to the statute the regulation is a nullity. The Orderly Milk Marketing Act gives to Plaintiff the unqualified right to sell its milk at its cost and the Commissioner exceeded his authority by promulgating a regulation in variance therewith.
In this connection, we refer to the case of Waite et al. v. Macy et al., 246 U.S. 606, 38 S.Ct. 395, 396, 62 L.Ed. 892, wherein Plaintiffs, importers of tea, sought to prevent a board of general appraisers, known as the Tea Board, from applying to such tea tests which were alleged to be illegal in the light of the Act of Congress, 21 U.S.C.A. § 41 et seq., fixing the standard to be applied in determining the right to import tea. Under the statute it was made unlawful to import any merchandise, as tea, which was inferior in purity, quality and fitness for consumption to the standards enumerated in the statute. A regulation of the Tea Board enlarged the standards set forth in the Act by providing that the presence of any coloring matter in tea was an absolute ground for exclusion. The Court, through Mr. Justice Holmes, concluded the Tea Board, by such rule, was attempting to enlarge the standards set by the statute, and in disallowing the right of the Board to so act, the Court said:
“No doubt it is true that this Court cannot displace the judgment of the board in any matter within its jurisdiction, but it is equally true that the board cannot enlarge the powers given to it by statute and cover a usurpation by calling it a decision on purity, quality or fitness for consumption. Morrill v. Jones, 106 U.S. 466, 1 Sup.Ct. 423, 27 L.Ed. 267, United States v. United Verde Copper Co., 196 U.S. 207, 215, 25 Sup.Ct. 222, 49 L.Ed. 449. United States v. George, 228 U.S. 14, 21, 33 Sup.Ct. 412, 57 L.Ed. 712.”
And further said:
“ * * * The regulation makes the presence of any coloring matter an absolute ground for exclusion. But the only grounds recognized by the statute are inferiority to the standard in purity, quality and fitness for consumption, words repeated over and over again in the act. * * * ”
In Werner v. United States 7 Cir., 264 F.2d 489, the Internal Revenue Code of 1939, 26 U.S.C.A. § 1 et seq., provided the unqualified right of husband and wife to file a joint return. The Commissioner of Internal Revenue adopted a regulation which precluded the filing of a joint return where a single return had been filed by one spouse. The court held the regulation of the Commissioner was unreasonable and inconsistent with the terms of the statute which gave the unqualified right to file a joint return, which right was withdrawn by the regulation of the Commissioner under certain circumstances. See also Lynch v. Tilden Produce Co., 265 U.S. 315, 44 S.Ct. 488, 68 L.Ed. 1034; Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528.
*529 This Court, in the case of Kramer v. State Board of Veterinary Medical Examiners, La.App., 55 So.2d 93, 94, had for determination the question whether the board, authorized to examine applicants to practice veterinary medicine or veterinary surgery in this State, could enlarge the qualifications set forth in the Act to be met by an applicant, by requiring that such applicant be a graduate of an accredited veterinary college in the absence of such a requirement in the Act. In disposing of the issue, we said:
“ * * * There is no provision in said section empowering the Board to set qualifications for the applicants before examination. On the other hand LSA-R.S. 37:1519 is very definite as to the requirements that must be met by the applicant. It even goes so far as to specify the form to be used in submitting the application, and to set forth the requirement that a fee accompany the application. Had the Legislature intended that the applicant be a graduate of an accredited college, we believe that the Legislature would have so provided.”
See also Charbonnet v. Board of Architectural Examiners, 205 La. 232, 17 So.2d 261, 263.
Another contention made by the Commissioner is that by the language of sub-paragraph 14 of LSA-R.S. 40:940.2 — which provides:
“ ‘Disruptive Sales Practices’ means those practices which are prohibited in R.S. 40:940.3 or such other practices as may be determined by the commissioner to be disruptive of orderly marketing. Added Acts 1958, No. 193, § 1.”
—he is authorized to promulgate the rules attacked. This argument is without merit for the reason hereinabove stated the Orderly Milk Marketing Act provides that no processor shall sell for less than his cost, and certainly where Plaintiff seeks to comply with the Act in this respect, such corn-pliance cannot be categorized as a disruptive sales practice.
■Under the Milk Marketing Act the right was granted to Plaintiff by the Act to adopt as the price to be charged by it for its milk a price not lower than its own cost in processing same. That portion of the regulation promulgated by the Commissioner which attempts to substitute as the price to be charged by Plaintiff the lowest price in the area as a substitute for the price representing the cost to the processor as defined in the Act is therefore a nullity.
The legislature did not delegate its price-fixing authority to the Commissioner. If the Act is in need of amendment, that right is vested only in the legislature and not the Commissioner or the Court.
In a well considered written opinion the Trial Court in its reasons for judgment in favor of Plaintiff made the following observation, which we take the liberty of adopting as our own:
“The law details the elements and items to be considered in calculating cost. There is nothing whatsoever anywhere in the language of this law that says or even remotely suggests that the selling price of a new establishment for processing, handling or distributing milk and milk products for sale in the trade shall be governed by or not be less than the selling price of other concerns already established. The reason for the rule set down in the last sentence of section VII of the regulation may be understandable but the commissioner has no authority to make it if the legislature did not see fit to lay some foundation for it. An Act of the legislature is not required to state every conceivable contingency. The Orderly Milk Marketing Act gives to the commissioner the duty and authority as the instrumentality of the state to execute and enforce the legislative intent therein expressed. The legislative intent of that law is to prevent price cut *530 ting below cost. The Act does not single out any class or fix any other standard for determining the minimum price level. The commissioner cannot do so.”
Judgment affirmed.