188 P.3d 890

**In the Matter of the Driver's License Suspension of Kyle J. Reisenauer.**

**Kyle J. REISENAUER, Petitioner–Respondent,**

v.

**STATE of Idaho, DEPARTMENT OF TRANSPORTATION, Respondent–Appellant.**

No. 33678.

Supreme Court of Idaho, Boise, April 2008 Term.

June 12, 2008.

Hon. Lawrence G. Wasden, Attorney General, Boise. for appellant. Edwin L. Litteneker argued.

University of Idaho, Legal Aid Clinic, Moscow, for respondent. Jason Wing and Jason Flaig argued.

W. JONES, Justice.

## I. STATEMENT OF THE FACTS AND PROCEDURE

On February 26, 2006, Kyle J. Reisenauer drove to the 6th and Main intersection in Moscow. Officer Dustin Blaker pulled over Reisenauer and observed that Reisenauer's eyes were red and that his vehicle emitted "the odor of burnt marijuana." Officer Blaker then instructed Reisenauer to perform several field sobriety evaluations and Reisenauer subsequently was arrested for driving under the influence of alcohol or drugs and transported to the Latah County Jail. At the jail, Officer Rodney Wolverton performed a Drug Recognition Evaluation on Reisenauer and concluded that Reisenauer was not safe to drive, as he was under the influence of cannabis and depressants. Reisenauer also was tested through breath samples on the Intoxilyzer 5000 breath machine, which revealed two breath samples of .000.

Officer Blaker discovered marijuana inside the vehicle Reisenauer was driving, and after receiving his *Miranda* warnings Reisenauer eventually admitted to smoking marijuana earlier in the night. Later, Reisenauer submitted to a urinalysis, from which the Idaho State Police Forensic Services detected Carboxy–THC in Reisenauer's urine. Due to the test results, the Idaho Transportation Department notified Reisenauer of its intention to suspend his driving privileges. He requested an administrative hearing, and on May 9, 2006 a telephone hearing was held regarding this matter.

The suspension of Reisenauer's driving privileges was sustained in the subsequent FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER.

Reisenauer appealed to the district court, which set aside the suspension, holding that Carboxy–THC "does not constitute substantial evidence of 'the presence of drugs or other intoxicating substances in violation of

section 18–8004, 18–8004C or 18–8006, Idaho Code.'" The district court also held that the Department was collaterally estopped from litigating the issue of whether detection of Carboxy–THC may serve as substantial competent evidence of the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Idaho Code. In rendering its collateral estoppel decision, the district court relied on *Walterscheid v. Idaho Transportation Department*[1], wherein the court held that the presence of Carboxy–THC "did not meet the requirements of the suspension statute." The district court held that "a test indicating the presence of Carboxy–THC was not sufficient evidence to satisfy the suspension statute." From that decision, the Department appeals to this Court.

## II. STANDARD OF REVIEW

■ When reviewing a decision of the district court acting in its appellate capacity, the Supreme Court directly reviews the district court's decision. *Losser v. Bradstreet,* 145 Idaho 670, 183 P.3d 758 (2008).

In determining whether substantial evidence supports the Agency's decision, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67–5279(1). In addition, "the court shall affirm the agency action," unless, among other things, "the court finds that the agency's findings, inferences, conclusions, or decisions are … not supported by substantial evidence on the record as a whole." I.C. § 67–5279(3)(d).

## III. ANALYSIS

**A positive test for Carboxy–THC may not serve as substantial evidence of the presence of drugs or other intoxicating substances for the purpose of satisfying the conditions for suspending Reisenauer's driving privileges.**

*Legal Framework*

Here, the district court reviewed an agency action. Idaho Code § 18–8002A(8) allows

---

1. A copy of the *Walterscheid* decision was not attainable from the clerk's office. The court minutes were acquired, though; they state that "Court found that Carboxy–THC test that Jared Waltersheid (sic) underwent is not a test result that shows the presence of drugs and, therefore, found that the requirements of 18–8002A(7)(c) have not been met."

a party aggrieved by the hearing officer's decision to seek judicial review of that decision.

Idaho Code § 18–8004(1)(a) states:

It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

Pursuant to Idaho Code § 18–8002A(4), a violation of § 18–8004 may result in the suspension of one's driving privileges:

Upon receipt of the sworn statement of a peace officer that there existed legal cause to believe a person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol, drugs or other intoxicating substances and that the person submitted to a test and the test results indicated an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Idaho Code, the department shall suspend the person's driver's license, driver's permit, driving privileges or nonresident driving privileges:

(i) For a period of ninety (90) days for a first failure of evidentiary testing under the provisions of this section. The first thirty (30) days of the suspension shall be absolute and the person shall have absolutely no driving privileges of any kind. Restricted noncommercial vehicle driving privileges applicable during the remaining sixty (60) days of the suspension may be requested as provided in subsection (9) of this section.

(ii) For a period of one (1) year for a second and any subsequent failure of evidentiary testing under the provisions of this section within the immediately preceding five (5) years. No driving privileges of any kind shall be granted during the suspension imposed pursuant to this subsection.

The person may request an administrative hearing on the suspension as provided in subsection (7) of this section. Any right to contest the suspension shall be waived if a hearing is not requested as therein provided.

Idaho Code 18–8002A(7) provides the requirements regarding the proof necessary to satisfy the hearing officer:

The burden of proof shall be on the person requesting the hearing. The hearing officer shall not vacate the suspension unless he finds, by a preponderance of the evidence, that:

(a) The peace officer did not have legal cause to stop the person; or

(b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18–8004, 18–8004C or 18–8006, Idaho Code; or

(c) The test results did not show . . . the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Idaho Code. . . .

Neither party contests that there existed legal cause to stop Reisenauer, nor does anyone contend that Officer Blaker lacked legal cause to believe that Reisenauer was driving under the influence of alcohol, drugs or other intoxicating substances in violation of the law. The only issue, therefore, is whether the test results showed the presence of drugs or other intoxicating substances.

*Application*

■ The Department argues that "the issue before the Hearing Officer in the Administrative License Suspension context is not whether a particular 'impairment' can be shown, but is whether an evidentiary test has been failed by the presence of drugs." In the present case, the presence of Carboxy-THC only indicates that at some time in the past a person used marijuana. Indeed, Car-

boxy–THC is not in and of itself a drug in any event. It is only a metabolite of a drug. Its presence in a urine sample is no evidence of the presence of any drug. Accordingly, there clearly was not substantial competent evidence that Mr. Reisenauer failed an evidentiary test for drugs.

The State argues that one need only fail an evidentiary test for drugs in order to have one's driver's license suspended, and that it therefore is not necessary for the driver to have been under the influence of "intoxicating" drugs. While it is true that the State's test need only demonstrate the mere presence of drugs, it is not true that the statute will permit any drug to do. According to the statute, the drug that must be present also must be *intoxicating*. The statute used the words "drugs or other intoxicating substances," statutory language very similar to that which has been addressed by the U.S. Supreme Court. *United States v. Standard Brewery*, 251 U.S. 210, 40 S.Ct. 139, 64 L.Ed. 229 (1920). In *Standard Brewery*, the Standard Brewing Company was indicted for using grains, cereals, fruit or other food products to manufacture beer. *Id.* at 215, 40 S.Ct. at 139, 64 L.Ed. at 233. The beer, however, was clearly non-intoxicating, as it contained no more than one half of one percent alcohol. *Id.* The alleged prohibition of Standard Brewery's activity was found in the War-time Prohibition Act of November 21, 1918. The Act stated

> That after June thirtieth, nineteen hundred and nineteen, until the conclusion of the present war, and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, for the purpose of conserving the man power of the nation, and to increase efficiency in the production of arms, munitions, ships, food, and clothing for the army and navy, it shall be unlawful to sell for beverage purposes any distilled spirits, and during said time no distilled spirits held in bond shall be removed therefrom for beverage purposes except for export. After May first, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be deter-

> mined and proclaimed by the President of the United States, *no grains, cereals, fruit, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes.* After June thirtieth, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no beer, wine, or other intoxicating malt or vinous liquor shall be sold for beverage purposes except for export.

*Id.* at 217, 40 S.Ct. at 140, 64 L.Ed. at 234 (emphasis added).

Before interpreting this Act, the Court noted that

> [n]othing is better settled than that, in the construction of a law, its meaning must first be sought in the language employed. If that be plain, it is the duty of the courts to enforce the law as written, provided it be within the constitutional authority of the legislative body which passed it.

*Id.*

The Court interpreted the Act as follows:

> The prohibitions extend to the use of food products for making "beer, wine, or other intoxicating malt or vinous liquors for beverage purposes." These provisions are of plain import and are aimed only at intoxicating beverages. It is elementary that all of the words used in a legislative act are to be given force and meaning, *Market Co. v. Hoffman*, 101 U.S. 112, 115, 25 L.Ed. 782 [783]; and of course the qualifying words "other intoxicating" in this act cannot be rejected. It is not to be assumed that Congress had no purpose in inserting them or that it did so without intending that they should be given due force and effect. The government insists that the intention was to include beer and wine whether intoxicating or not. If so the use of this phraseology was quite superfluous, and it would have been enough to have written the act without the qualifying words.

> This court had occasion to deal with a question very similar in character in the

case of the *United States v. United Verde Copper Co.*, 196 U.S. 207, 25 Sup.Ct. 222, 49 L.Ed. 449, where an act permitted the use of timber on the public lands for building, agricultural, mining and other domestic purposes, and held that we could not disregard the use of the word 'other' notwithstanding the contention that it should be eliminated from the statute in order to ascertain the true meaning. So here, we think it clear that the framers of the statute intentionally used the phrase 'other intoxicating' as relating to and defining the immediately preceding designation of beer and wine.

*Id.* at 218, 40 S.Ct. at 140, 64 L.Ed. at 234–235.

■ The Court's analysis is applicable here. Just as the Act in *Standard Brewery* could have included non-intoxicating "beer and wine" by omitting the "other intoxicating" language, our law may have included non-intoxicating drugs by omitting the "other intoxicating substances" language. Since Idaho Code § 18–8002A refers to "drugs or any other intoxicating substances," any drug must be intoxicating in order for § 18–8002A to apply. Otherwise, one could lose his driver's license simply because he had taken a Children's Tylenol before hitting the highway. The Department has not alleged or proved that Carboxy–THC is intoxicating, and since the test results revealed only the presence of Carboxy–THC, Reisenauer met his burden of proving that the results did not show the presence of drugs or other intoxicating substances.

Because this case has been decided on the above issue, we need not address the issue of collateral estoppel and therefore decline to do so.

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed, and costs on appeal are awarded to Reisenauer.

Chief Justice EISMANN, Justices BURDICK, and HORTON concur.

J. JONES, J., concurring in the result.

I concur in the result reached by the Court in this case. But, while I.C. § 18–8002A(4)(a) provides that, when a person submits to a drug test, the Department must show the test results indicated the presence of intoxicating drugs in the person's system in order to suspend the person's driver's license, I would not make a blanket statement that the failure of a test to indicate an intoxicating drug at the time of the test always constitutes a failure to meet the requirements of Section 18–8002A(4)(a). Where, as here, Carboxy–THC is a derivative or metabolite of an intoxicating drug, test results indicating the presence of the derivative or metabolite, when supplemented by testimony extrapolated back to the time of the alleged offense to show that the intoxicating precursor was then present in the person's system, would satisfy the test element of the statute. In other words, if the Department is able to show that the person's system contained a drug that was in its intoxicating form at the time of the offense, the statute is satisfied.[2] There was no such evidence in this case. The evidence showed that with

2. The situation is akin to that where a blood alcohol test is used, not on a per se theory, but in order to demonstrate impairment at the time of the offense. In such a case the Court has stated:

Unlike proceedings on a per se theory, admission of a numerical BAC test result for purposes of demonstrating impairment must be extrapolated back to the time of the alleged offense to be relevant. The whole purpose of admitting the BAC test results is to show there was alcohol in the defendant's blood and that the level of alcohol in his system would have impaired his ability to drive in some identifiable way. This requires there be evidence connecting the test result to the time of the alleged offense and evidence showing how the

numerical result relates to the issue of impairment. In other words, numerical test results can be admitted in a driving under the influence prosecution if there is a connection shown between the numerical test result and driving impairment at the time the motor vehicle was operated. Therefore, the numerical results of Robinett's BAC tests are not relevant to a prosecution for driving under the influence because the results were not accompanied by any evidence that correlated the results to the time of the accident and how it would have impacted Robinett's ability to drive.

*State v. Robinett,* 141 Idaho 110, 113, 106 P.3d 436, 439 (2005).

the passage of time marijuana degrades to its metabolite, Carboxy–THC, but there was no evidence presented to the hearing officer to show that this change took place after the alleged offense, rather than beforehand. If there had been competent evidence in this case to show that the intoxicating form of the drug was in Reisenauer's system at the time of the alleged offense, a suspension of his license would have been warranted.

There are several aspects of this case that cause concern. It was rather surprising to hear counsel for the Department say in oral argument before the Court that the Department does not pursue license suspension proceedings in cases where no alcohol or drug test is administered. This appears to be based upon the Department's reading of Section 18–2002A(4)(a)—that the driving under the influence element ("person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol, drugs or other intoxicating substances"), is not particularly an indicator of impairment, or a separate ground for license suspension, but primarily an indicator that the police had probable cause to effectuate a stop of the suspect person.

The driving under the influence element is not, as the Department suggested, merely language to establish that there was probable cause to stop the driver. Rather, it allows for suspension of a person's driver's license where there are legal grounds to believe the person had been driving under the influence of an intoxicating substance. The statute assumes that there must be legal cause to stop the person. I.C. § 18–8002A(7) indicates five independent grounds upon which a person may challenge his license suspension, including that:

   (a) The peace officer did not have legal cause to stop the person; or

   (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18–8004, 18–8004C or 18–8006, Idaho Code, or

   (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Idaho Code ...

Subsections (a) and (b) make it clear that legal cause to stop, and grounds to suspend the license of a person who has been driving under the influence, are two different things, either of which, if proven by a person challenging a license suspension, can provide grounds for relief. The Department's reading of the provision is incorrect.

The Department's reading of the statute has apparently lead it to the conclusion that it may not seek to suspend the driver's license of a person who is not tested for alcohol or drugs (except for a person who refuses to be tested), even if the person is weaving all over the road. A fair reading of the statute does not support this conclusion. If an officer swears that there was legal cause to believe a person was driving under the influence, the person is subject to having his license suspended (unless a test is administered and the test results disclose no intoxicating substance). It is difficult to understand why a person would not subjected to a license suspension where he is obviously driving under the influence of an intoxicating substance and endangering the public on the road. Indeed, had no test been administered to Reisenauer in this case, the statute would seem to have permitted a license suspension, based upon the officer's observation of Reisenauer's driving performance, his physical condition, and his unsatisfactory performance of field sobriety tests.

A correct reading of I.C. § 18–8002A(4)(1) produces a troubling conclusion. In this day and age, blood, urine, or breath evidence is generally regarded as critical to a DUI prosecution, as well as to a license suspension proceeding. While the statute would allow a license suspension when a person is shown to have been driving under the influence where no test has been administered, the statute, as drafted, requires the Department to show, when a test has been administered, that an individual is both driving under the influence of an intoxicating substance and that the test indicated the presence of the substance (.08

or more where alcohol is concerned). One might justifiably ask why, if a person is driving under the influence of an intoxicating substance, he or she should not be subjected to a license suspension, regardless of the test results, or vice versa.

It has been long been the law of this State that there are two ways of proving a person has been driving under the influence. I.C. § 18–8004(1)(a) states:

It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

This Court has interpreted the statute as

[E]stablishing one crime with two ways of proving a violation....[T]he first way to prove a violation is to show under the totality of the evidence that the defendant was driving under the influence. The second way to prove a violation is to establish the defendant drove with an alcohol concentration of 0.08 percent or more. The State may elect to proceed against the defendant under either or both theories of proof.

*Robinett*, 141 Idaho at 112, 106 P.3d at 438 (citations omitted).

However, I.C. § 18–8002A(4)(a) departs from this two-way proof system when it comes to license suspension, providing:

Upon receipt of the sworn statement of a peace officer that there existed legal cause to believe a person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol, drugs or other intoxicating substances *and* that the person submitted to a test and the test results indicated an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Ida-

ho Code, the department shall suspend the person's driver's license . . .

(emphasis added). The problem with I.C. § 18–8002A(4)(a) is the use of "and" instead of "or" between the driving under the influence element and the test results element. It seems inconceivable that the Department would only need to show test results indicating the presence of drugs or a BAC result of .08 or greater in order to convict a person of driving under the influence but that the State would have to show both the test results and that the person was driving under the influence before a license suspension could be made. It is equally inconceivable that even if the Department presented an adequate showing that a person was driving under the influence of drugs or other intoxicating substances, it would also have to show that where a test is given the test results indicating the presence of drugs or other intoxicating substances in order to support a license suspension. Yet, that appears to be the import of the language in the statute based upon the "and" between these two elements. It is doubtful that this is what the Legislature intended.