IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37714

| | | |
|---|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF JOHNATHAN PAUL VAN CAMP. | ) ) ) | |
| IDAHO TRANSPORTATION DEPARTMENT, | ) ) | 2011 Opinion No. 33 |
| Petitioner-Appellant, | ) ) ) | Filed: May 27, 2011 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JOHNATHAN PAUL VAN CAMP, | ) ) ) | |
| Respondent. | ) ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

Decision reversing administrative license suspension, <u>affirmed</u>.

Michael Kane & Associates, PLLC, Boise, for appellant. Michael J. Kane argued.

Jacob D. Deaton, Boise, for respondent.

_____

GUTIERREZ, Judge

The Idaho Transportation Department (Department) appeals the district court's reversal upon judicial review of a Department administrative suspension of Johnathan Paul Van Camp's driver's license. For the reasons set forth below, we affirm the decision of the district court.

## I.

## BACKGROUND

Van Camp was arrested for driving under the influence after he made an illegal U-turn. The officer at the scene noticed that Van Camp's speech was thick and slurred, his eyes were red and watery, his mouth was dry, and there was a visible white film in the corners of his mouth. The officer also noticed that Van Camp seemed confused and disoriented and could not find his wallet, registration, or proof of insurance. Van Camp searched for his wallet for several minutes, often looking in the empty glove box of the car. The officer asked Van Camp how much he had

1

to drink, and Van Camp replied that he had not had anything. At the officer's request, Van Camp exited the vehicle to perform the standardized field sobriety tests. After Van Camp failed the tests, the officer placed him under arrest for suspicion of driving under the influence of alcohol and/or drugs. Van Camp submitted to a breath test, which resulted in two breath samples of .00; he also submitted to a urinalysis, from which the Idaho State Police Forensic Services detected Cyclobenzaprine. Van Camp admitted to taking Cyclobenzaprine and Seroquel.

Van Camp was notified by the Department of an administrative license suspension (ALS) and was provided with notice for a telephone hearing. At the hearing, Van Camp argued, among other things, that a drug must be intoxicating for Idaho Code § 18-8002A to apply, which consequently requires "either some written certification or some other standard stating the drug is intoxicating." The hearing officer sustained Van Camp's administrative license suspension concluding that the presence of the controlled substance in his urine, combined with the observed impairment by the officer, was sufficient to establish a violation under I.C. § 18-8004. Van Camp filed a timely petition for judicial review. Subsequently, the district court entered a memorandum decision and order reversing the hearing officer's ruling and reinstated Van Camp's driving privileges. The Department appeals seeking reversal of the district court's decision.

## II.

## DISCUSSION

The Idaho Administrative Procedures Act (IDAPA) governs the review of Department decisions to deny, cancel, suspend, disqualify, revoke or restrict a person's driver's license. *See* I.C. §§ 49-330, 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, as long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v.*

2

*Blaine County, ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

A court may overturn an agency's decision where its findings, inferences, conclusions or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

The ALS statute, I.C. § 18-8002A, requires that the Department suspend the driver's license of a driver who has failed an evidentiary test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer designated by the Department to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, *drugs or other intoxicating substances* in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of *drugs or other intoxicating substances* in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code. . . .

I.C. § 18-8002A(7) (emphasis added). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133. The interpretation of a statute is an issue of law over which we exercise free review. *Corder v. Idaho Farmway, Inc.*, 133 Idaho 353, 358, 986 P.2d 1019, 1024 (Ct. App. 1999).

3

Idaho Code § 18-8002A(4)(a) states in relevant part:

Upon receipt of the sworn statement of a peace officer that there existed a legal cause to believe a person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol, drugs or other intoxicating substances and that the person submitted to a test and the test results indicated an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004 . . . the department shall suspend the person's driver's license. . . .

Here, the district court reversed the suspension of Van Camp's driver's license on the basis that the officer's observations of impairment only support an inference of causation if there is separate proof that the drug was intoxicating. The district court stated:

Idaho Code § 18-8002A only applies if the drug that is present is shown to be intoxicating. Where there is no allegation or proof that a test result reveals the presence of an intoxicating drug, a positive test for the presence of a drug does not by itself constitute substantial evidence of the presence of an intoxicating drug for the purpose of suspending driving privileges. Alternatively, evidence from a prescription drug label that a drug has the potential to impair driving provides evidence that a drug is intoxicating.

(citations omitted).

The Department argues that the presence of Cyclobenzaprine, along with the other evidence of impairment, was sufficient to prove that Van Camp failed an evidentiary test for drugs or other intoxicating substances. Van Camp counters that since there was no separate evidence offered to prove that Cyclobenzaprine is an intoxicating drug, he was not under the influence of an intoxicating drug for purposes of I.C. § 18-8002A. Because no transcript of the hearing is presented on appeal, we are limited to considering the hearing officer's findings of fact and conclusions of law and order which in relevant part states:

**2.**
**DID OFFICER WILSON HAVE LEGAL CAUSE TO BELIEVE VAN CAMP VIOLATED IDAHO CODE § 18-8004?**
1. Van Camp exhibited the following behaviors:
   a. Impaired memory
   b. Glassy eyes
   c. Bloodshot eyes
2. Van Camp met the decision points on the following Standardized Field Sobriety Tests:
   a. Horizontal Gaze Nystagmus
   b. Walk-and-Turn
   c. One-Leg-Stand

3. Van Camp appeared very confused.
4. Van Camp admitted to consuming prescription medications.
5. The Court's decision in *Feasel* states that it is reasonable for the hearing examiner to infer that the substance detected in a subject's urine sample, along with the other evidence in the record, caused intoxication and impaired.
6. The record in this matter clearly shows a level of impairment.
7. The department has submitted a urine analysis showing a controlled substance and an affidavit stating observed impairment.
   a. This is sufficient to establish a violation of Idaho Code § 18-8004.
8. Officer Wilson observed Van Camp operating the motor vehicle.
9. Officer Wilson had sufficient legal cause to arrest Van Camp and request an evidentiary test.

**3.**

**DID THE EVIDENTIARY TEST RESULTS INDICATE A VIOLATION OF IDAHO CODE §§ 18-8004, 18-8004C, 18-8006?**

1. The analyses of Van Camp's breath samples indicate a [BAC] of .00/.00.
2. The analyses of Van Camp's urine analysis show the presence of Cyclobenzaprine.
3. The officer observed several indicators of impairment of an intoxicating substance.
4. Van Camp is in violation of Idaho Code § 18-8004.

. . . .

**CONCLUSION OF LAW**

Conflicting facts, if any, were considered and rejected in favor of the foregoing cited facts. Based upon the foregoing findings of fact I conclude that all of the requirements for suspension of the petitioner's driving privileges set forth in Idaho Code §§ 18-8002 and 18-8002A were complied with in this case.

In reversing the suspension of Van Camp's driver's license, the district court relied primarily on *Reisenauer v. State, Dep't of Transp.*, 145 Idaho 948, 188 P.3d 890 (2008). In *Reisenauer*, our Supreme Court determined that a drug must be intoxicating in order for I.C. § 18-8002A to apply. There, the presence of Carboxy-THC, a metabolite of marijuana, was found in Reisenauer's urine. The Court held that a positive test for Carboxy-THC only indicated that the driver had ingested marijuana at some time in the past. Its presence in a urine sample is not evidence of the presence of any drug. Therefore, Reisenauer's test results could not be considered as substantial and competent evidence that Reisenauer failed an evidentiary test for drugs. *Reisenauer*, 145 Idaho at 950-52, 188 P.3d at 892-94.

5

We note the factual similarities in the instant case with those in *Reisenauer*. There, when the officer pulled Reisenauer over, the officer noticed that Reisenauer's eyes were red, and also noticed an odor of burnt marijuana coming from Reisenauer's vehicle. Reisenauer failed several field sobriety tests and was arrested for driving under the influence of alcohol or drugs. Although the breath test revealed two breath samples of .00, after an officer performed a Drug Recognition Evaluation, the officer determined that Reisenauer was under the influence of cannabis and depressants. In addition, after submitting to a urinalysis, Carboxy-THC was detected in Reisenauer's urine. The Supreme Court determined that the only issue was whether the test results showed the presence of drugs or other intoxicating substances. *Id.* at 949-50, 188 P.3d at 891-92. The Court further determined that "[w]hile it is true that the State's test need only demonstrate the mere presence of drugs, it is not true that the statute will permit any drug to do. According to the statute, the drug that must be present must also be *intoxicating*." The *Reisenauer* Court relied on *United States v. Standard Brewery*, 251 U.S. 210 (1920), which dealt with statutory language that was very similar to the "drugs or other intoxicating substances" language there. In *Standard Brewery*, an Act prohibited the use of food products for making "beer, wine, or other intoxicating malt or vinous liquors for beverage purposes." Therefore, the provisions were only aimed at intoxicating beverages. *Id.* at 218. Our Supreme Court stated:

> Just as the Act in *Standard Brewery* could have included non-intoxicating "beer and wine" by omitting the "other intoxicating" language, our law may have included non-intoxicating drugs by omitting the "other intoxicating substances" language. Since Idaho Code § 18-8002A refers to "drugs or any other intoxicating substances," *any drug must be intoxicating in order for § 18-8002A to apply*.

*Reisenauer*, 145 Idaho at 952, 188 P.3d at 894 (emphasis added).

Following our Supreme Court's reasoning in *Reisenauer*, we conclude that there must be some independent evidence that a drug is intoxicating in order for I.C. § 18-8002A to apply. *See Reisenauer*, 145 Idaho at 952, 188 P.3d at 894. In order for a hearing officer to uphold a suspension, it must first be determined that I.C. § 18-8002A applies, and in order for I.C. § 18-8002A to apply, it must be established by the Department that the drug in question is intoxicating. At no point in this case did the Department offer any independent evidence to establish that Cyclobenzaprine is an intoxicating drug. *See id.* (stating that "[t]he Department has not alleged or proved that Carboxy-THC is intoxicating, and since the test results revealed

6

only the presence of Carboxy-THC, Reisenauer met his burden of proving that the results did not show the presence of drugs or other intoxicating substances."). The Department established the presence of Cyclobenzaprine and presented evidence of impairment, including the failed sobriety tests. However, test results indicating the presence of Cyclobenzaprine alone does not establish that Cyclobenzaprine is intoxicating. We agree with the district court that the officer's observations of impairment only support an inference of causation when there is separate proof that the drug is intoxicating. *See id.* (concluding that a drug must be intoxicating in order for § 18-8004 to apply, otherwise "one could lose his driver's license simply because he had taken a Children's Tylenol before hitting the highway."). Because the Department failed to establish that Cyclobenzaprine is an intoxicating drug and caused the intoxicating effects that the officer observed, I.C. § 18-8002A does not apply here and Van Camp has met his burden in establishing that there is insufficient evidence to support the suspension of his driving privileges.

The Department also asserts that if separate evidence is required along with the presence of a drug and other evidence of impairment, it would effectively shift the burden in license suspension matters from the driver to the Department. Pursuant to I.C. § 18-8002A(7), the burden initially falls on the person requesting the hearing. By challenging the sufficiency of the evidence, Van Camp effectively satisfied his burden and it then shifted to the Department to demonstrate that Cyclobenzaprine is an intoxicating drug. Therefore, in this instance, the burden did not shift to the Department before the driver satisfied his initial burden.

## III.

## CONCLUSION

The district court did not err when it reversed the Department's order suspending Van Camp's driver's license. Although the evidence before the hearing officer established that Van Camp showed signs of impairment and test results showed the presence of Cyclobenzaprine, there was no evidence to establish that the drug was intoxicating. Therefore, Van Camp met his burden in establishing grounds for vacating his suspension. Accordingly, we affirm the district court's reversal of the administrative license suspension.

Judge MELANSON **CONCURS.**

Chief Judge GRATTON, **DISSENTING**

I respectfully dissent.

7

The process of license suspension begins with an affidavit from a police officer. Idaho Code § 18-8002A(5)(b). In the affidavit, the officer must state the legal cause for belief that the driver was operating the vehicle while under the influence of alcohol, drugs or other intoxicating substances and set forth the test results. *Id.* The officer serves the notice of suspension on the driver and forwards the notice to the Idaho Transportation Department (Department).[1] *Id.*

Our analysis should begin with this statutorily-required affidavit of legal cause. In this case, the officer set forth his observations of Van Camp's impaired state, including field sobriety test results. The officer indicated that Van Camp admitted taking Cyclobenzaprine and Seroquel. The officer concluded that the negative test for breath alcohol content was not consistent with the impairment detected. Finally, the drug test indicated the presence of Cyclobenzaprine. On this basis, the officer determined that he had legal cause to believe that Van Camp operated the vehicle while under the influence of drugs and issued the suspension notice.

I believe that the affidavit of legal cause was both sufficient and as contemplated under the statute. The police officer served the suspension of the driver's license based upon: (1) observations of driver impairment, and (2) a drug test indicating the presence of a drug. In my view, the officer is not required under the statute to be an expert in or obtain expert evaluation or information regarding prescription drug impairments or side effects, the qualities of particular drugs, or what drugs may be a likely source of any impairment.[2] The statute does not require that the officer conclude, or be qualified to conclude, that the detected drug is "intoxicating" in order to swear to the affidavit of legal cause.

It must be remembered that, "upon receipt" of the officer's affidavit, the Department <u>must</u> suspend the driver's license. I.C. § 18-8002A(4)(a). At that point, the suspension is in

[1]    The Department may serve the suspension notice if the officer failed to do so or failed to include the date of service. I.C. § 18-8002A(5)(c).

[2]    In this case, the officer noted in his affidavit that he had performed a "Drug Recognition Evaluation" (DRE). He further indicated that, at the conclusion of the evaluation, it was his opinion that Van Camp "was under the influence of a CNS [central nervous system] depressant and not capable of operating a motor vehicle safely." At the administrative license suspension hearing, Van Camp noted that the officer was not listed on the Idaho State Police roster of specially trained "Drug Recognition Experts" qualified to administer and opine from such an evaluation. The hearing officer noted that the DRE information would not be considered. Van Camp does not challenge the officer's affidavit.

8

effect. In fact, the driver is then given the right to challenge "the suspension." I.C. § 18-8002A(7). Unless the driver timely challenges the suspension, it remains effective. Idaho Code § 18-8002A(4)(a) does not appear to contemplate that the Department conduct analysis of or identify the intoxicating nature of the drug after receipt of the affidavit and before suspension, but merely that the suspension issue "upon receipt" of the affidavit. Therefore, unless the officer or the Department is required to identify the intoxicating nature of the specific drug detected prior to suspension -- which I do not believe the statutory procedure contemplates -- the suspension is issued upon the evidence of impairment and the test demonstrating the presence of a drug.[3]

In my estimation, the statute presumes that a drug is potentially impairing.[4] Some drugs are intended, by their very purpose, to have an effect which would impair a driver, e.g., sleep aids. But many, if not all, drugs have potentially impairing effects. Unintended consequences of ingestion of a drug are commonly known as side effects. These may run the gamut of ill effects upon a person, including hallucinations, cognitive dysfunction, or central nervous system changes, to name but a few. Side effects may be known or quantified and described by the pharmacists at the time of prescription, included in the labeling which comes with the drug or described in the Physician's Desk Reference or other sources. Sometimes this drug information includes specific warnings such as to advise against driving or operating heavy machinery. *Cf.*, *Feasel v. Idaho Transp. Dep't*, 148 Idaho 312, 316, 222 P.3d 480, 484 (Ct. App. 2009) ("The label on the Prozac indicated it may cause drowsiness, it may impair or lessen the ability to drive or operate a car and the user should be familiar with the effects before driving."). Drugs may also cause impairment due to dosage, interaction with other drugs or substances, or idiosyncratic

---

[3] The district court, in this case, stated that "for a license to be suspended" there must be: (1) the officer's legal cause, (2) test results showing the presence of a drug, and (3) "independent" evidence establishing that the drug is intoxicating. Perhaps the district court meant that the three requirements were necessary "for a license suspension to be upheld." The State is not required by the statute to identify, analyze, or present "independent" evidence of the potential intoxicating effect of the drug prior to the suspension.

[4] I equate, in this context, "impairing" with "intoxicating." The term "intoxicating" carries the connotation of a high or inebriation as commonly understood with alcohol or illicit drugs. Under the statute, drugs, which include prescription drugs, are not limited to those which may produce some sort of a high, but also include, for license suspension purposes, those that may impair a driver's ability to safely operate a motor vehicle.

9

reaction in a particular person. Consequently, for purposes of initial suspension, the statute rationally only requires evidence of impairment and a positive drug test result for suspension to occur.

The driver is given the right, upon timely request, to challenge the suspension. I.C. § 18-8002A(7). The statute directs that, relative to the administrative hearing, "[t]he burden of proof shall be on the person requesting the hearing." I.C. § 18-8002A(7). The statute sets forth five grounds upon which a hearing officer may vacate a license suspension, and those grounds relevant to this matter include:

> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code. . . .

I.C. § 18-8002A(7)(b) and (c). Van Camp was required to prove one of these grounds by a preponderance of the evidence. I.C. § 18-8002A(7). It was not the Department's burden at the evidentiary hearing to disprove any of the possible grounds for challenging the suspension. Van Camp was free to challenge the test itself, or to prove that by its very nature the drug detected is not impairing, or that the known impairments associated with the drug are inconsistent with the observed impairments, or that the dosage was such that it could not have caused the impairments, or that some medical condition or event was the cause of the impairments, or any of a host of other reasons why his driving was not "under the influence" of the detected drug.

The majority concludes that, while the burden at the evidentiary hearing "initially" falls on the person requesting the hearing, by simply initiating a hearing to challenge the suspension, the burden shifts to the Department to demonstrate that the drug is intoxicating. The majority is incorrect in holding that the administrative hearing is a "sufficiency of the evidence" challenge. In fact, the driver bears the burden by a preponderance of the evidence to establish a ground for vacating the suspension. Sufficiency of the evidence is one of the appellate standards. It was Van Camp's burden to present evidence to vacate the suspension, not merely to claim that the Department had insufficient evidence to disprove his ground for vacating the suspension. Van Camp did not satisfy his burden so as, according to the majority, to shift to the Department the

10

burden to prove that the detected drug was intoxicating.[5] Even if the statute is not based upon a presumption regarding drugs, as I have argued, which Van Camp would be required to overcome with specific evidence, clearly the rational inference underlying the suspension is that the driver's observed impaired state is or may be related to the detected drug. Thus, to satisfy his burden, Van Camp was required to do more than simply initiate the challenge; he was required to, and did not, present a preponderance of evidence that he was not under the influence of the drug.

I agree with the statement in *Reisenauer v. State Dep't of Transp*., 145 Idaho 948, 952, 188 P.3d 890, 894 (2008), that "any drug must be intoxicating in order for § 18-8002A to apply." Should the driver demonstrate that the drug is not intoxicating or was not the intoxicating/impairing agent in the particular circumstances of the case, then the statute does not apply and the suspension should be vacated.[6] Van Camp did not do so in this case and, therefore, I would reverse the decision of the district court reversing the administrative license suspension.

---

[5] I most certainly disagree with the statement by the majority placing the burden upon the Department to prove that the drug "caused the intoxicating effects that the officer observed."

[6] The *Reisenauer* opinion continues that "otherwise, one could lose his driver's license simply because he had taken a Children's Tylenol before hitting the highway." *Reisenauer*, 145 Idaho at 952, 188 P.3d at 894. I take the reference to Children's Tylenol as a metaphor for any drug shown to not be intoxicating. The *Reisenauer* opinion admits to no information in the record by which to conclude that Children's Tylenol is, in fact, under all circumstances (including over dosage or drug interaction), in no way potentially impairing to a person of sufficient age to hold a driver's license. So, indeed, as I read the statute, a driver could, conceivably, lose his driver's license if, under the circumstances, his impaired driving was due to the influence of Children's Tylenol (assuming drug testing could detect the drug).

11