**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46526**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: September 22, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOSEPH BLAKE SCOVILL, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

Judgment of conviction for battery against a health-care worker, vacated and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Joseph Blake Scovill appeals from his judgment of conviction for battery against a health-care worker, Idaho Code § 18-915C. We hold that the district court abused its discretion by not striking that portion of the victim's trial testimony which was inconsistent with his preliminary hearing testimony and which the State failed to disclose in response to Scovill's written discovery request under Idaho Criminal Rule 16(b)(6). Because this error was not harmless, we vacate Scovill's judgment and remand the case.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In October 2017, Scovill's father took Scovill to the hospital emergency room in Idaho Falls, believing he was having an adverse reaction to medication he was taking for his mental

1

health issues. While in the waiting room, Scovill acted erratically, including aggressively opening the door, making a rude hand gesture at the receptionist, "tossing things around," and handing out "prescription discount cards" he located in the waiting room. Due to Scovill's agitated demeanor, the receptionist signaled to another employee to call security. Two hospital security guards, Albright and Kelly, responded. Both Albright and Kelly are active Idaho Falls police officers who also routinely work as security guards at the hospital.

When Scovill saw the security guards approaching, he removed his jacket, put his hands up and appeared to be preparing for a fight. After a brief discussion with Albright, Scovill left the emergency room, and Albright and Kelly followed Scovill outside. While outside, Scovill was, according to Albright, "flailing" his arms, being profane, acting "uncontrollable" and again posturing as if to fight. After several minutes, Scovill started sprinting back to the emergency room. Albright ran after Scovill and followed him into the emergency room.

At this point, a video recording from the emergency room security camera (video) shows that as Albright entered the emergency room following Scovill, Scovill spun around and lunged towards Albright; the two men made physical contact; Albright wrapped his arms around Scovill's upper torso; and both Albright and Scovill went to the ground. While on the ground, Albright and Scovill were partially obscured from the security camera's view. According to Albright's trial testimony, however, Scovill continued to swing at Albright's face and connected with his shoulders and torso. Albright then punched Scovill three times in the face to gain control. Finally, with the help of Kelly and a hospital employee, Albright subdued Scovill and handcuffed him.

As a result of the physical contact between Scovill and Albright, the State charged Scovill with battery on a hospital employee under I.C. § 18-915C. During discovery, Scovill requested that the State produce any statement by a prosecution witness or prospective prosecution witness to the prosecuting attorney, his agents, or any official involved in the investigation as I.C.R. 16(b)(6) requires.

During the preliminary hearing, Albright testified about the physical contact between him and Scovill at the emergency room door:

Q. And what happened?
A. As he got into the ER waiting room, I was pretty much on his heels because I was worried about the safety of the staff. As he got there, he

2

turned and spun to confront me; and I believe he raised his left arm like he was going to throw a punch.

Q. Okay. Did he run towards you?

A. He stepped towards me.

Q. Okay. And what happened when that happened?

A. Well, when he raised his arm and stepped towards me, I wrapped him up around the torso and the head with my arms and my upper body and took him to the ground.

Further, on cross-examination Albright testified:

Q. Okay. So he had not accosted you? You first accosted him?

A. I don't have to wait to be punched before I can take use of force--or use use [sic] force.

At trial, the State called the receptionist as its first witness. She testified about the physical contact between Scovill and Albright at the emergency room door:

Q. [D]id you see if [Scovill] was able to make contact with [Albright]?

A. He did make contact.

Q. Do you know what part of his body?

A. His upper torso and chest.

Q. [Scovill's] upper torso and chest?

A. Oh no. His hands and like face were kind of towards [Albright's] chest.

Q. Okay. But you saw him make contact--

A. Yes.

Scovill's counsel moved to strike this testimony as a sanction for the State's failure to disclose the receptionist's statement about this contact under I.C.R. 16(b)(6) per Scovill's written discovery request. The district court granted this motion and instructed the jury to disregard the receptionist's testimony "about what she saw with regard to any contact between [Scovill] and [Albright]." Further, the court commented to the jury that "there is going to be other testimony and video evidence that's going to be more probative" of the contact.

Later, during the trial and before Albright testified, Scovill moved to exclude Albright's testimony as a sanction for the State's failure to comply with I.C.R. 16(b)(6) after the prosecuting attorney met with Albright in preparation for trial. In support, Scovill conducted a voir dire examination of Albright. During this examination, Albright testified he had met with the prosecuting attorney twice after the preliminary hearing and also repeatedly reviewed the video.

At the conclusion of the voir dire examination, the district court inquired whether Albright's recollection of his encounter with Scovill had changed after his discussions with the prosecuting attorney, and Albright expressly acknowledged that it had. Despite this

3

acknowledgement, however, the district court ruled Scovill had not established Albright would in fact change his testimony at trial but stated that if he did change his testimony, it would be subject to being stricken.

Albright then testified for the first time on direct examination that Scovill hit him in the chest before Albright wrapped his arms around Scovill:

> Q.   What happened when you went through the [emergency room] doors?
> A.   As soon as I entered, I saw [Scovill] spinning to his left. He had what appeared to me as his arm cocked back, his left hand--or yeah, left hand in a fist, and he spun towards me like he was going to try to punch me.
> Q.   Okay. And what happened next?
> A.   I was still moving forward. [Scovill] came and hit me in the chest with his upper torso. I wrapped him up.

Further, Albright testified a screenshot from the video showed the exact moment at which Scovill hit him in the chest at the emergency room door:

> Q.   What does [this video screenshot] show?
> A.   It shows [Scovill] hitting me in the chest with his shoulder and me wrapping him up.

Following Albright's direct examination, Scovill moved to strike Albright's testimony that Scovill "hit [Albright] in the chest." Scovill referred to this testimony as "new information . . . not in the preliminary hearing." The district court agreed that Albright had changed his testimony, but despite its earlier ruling that it would strike Albright's testimony if the testimony changed, the court denied Scovill's motion to strike. The court reasoned Albright's undisclosed testimony did not prejudice Scovill because the video "trumps everything," "speaks for itself," and shows "exactly what happened" regardless of Albright's undisclosed testimony.

After Albright's cross-examination, Scovill again moved to strike Albright's testimony based on the prosecuting attorney's failure to disclose Albright's explanation for punching Scovill three times in the face while on the ground. Albright testified for the first time at trial that he punched Scovill because Albright had "safety concerns" that Scovill would incapacitate Albright and take his weapons. In response to Scovill's motion to strike this testimony, the district court indicated this testimony would be "more relevant" if the State's argument were that Scovill initiated the alleged battery at the emergency room door and then continued it onto the ground.

4

Apparently to avoid a ruling that the State had failed to comply with Rule 16(b)(6) by not disclosing Albright's explanation for punching Scovill, the State agreed per the district court's suggestion to limit its closing argument to the alleged battery at the emergency room door and to forego arguing about any alleged battery on the ground. As agreed, the prosecuting attorney argued during closing argument only that "[Scovill] hit [Albright] in the chest with his upper body, and at that point [Albright] wrapped his arms around [Scovill] and took him to the ground." In support, the prosecutor relied on the video screenshot, which Albright had testified showed Scovill hitting Albright.

Ultimately, the jury found Scovill guilty. The district court granted a withheld judgment and imposed three years of probation. Scovill timely appeals his judgment of conviction, arguing the district court abused its discretion by granting the State's motion in limine to exclude certain evidence regarding Scovill's mental illness and by not striking Albright's trial testimony that Scovill hit Albright.

## II.

## ANALYSIS

### A.      Failure to Strike Albright's Trial Testimony Was an Error

Scovill challenges the district court's denial of his motion to strike Albright's testimony that Scovill hit Albright in the chest at the emergency room door. Idaho Criminal Rule 16 governs the prosecution's discovery and disclosure obligations in a criminal case. The discovery rules are designed to safeguard the truth-seeking functions of trials, to promote fairness and candor, to facilitate fair and expedient pretrial fact gathering, and to prevent surprise at trial. *State v. Morin*, 158 Idaho 622, 626, 349 P.3d 1213, 1217 (Ct. App. 2015). These rules should be construed "to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay." I.C.R. 2(a); *see also State v. Montgomery*, 163 Idaho 40, 45, 408 P.3d 38, 43 (2017) (quoting I.C.R. 2(a)).

Idaho Criminal Rule 16(b)(6) provides, in part, that upon a defendant's written request the prosecuting attorney must provide "the statements made by the prosecution witnesses or prospective prosecution witnesses to the prosecuting attorney or the prosecuting attorney's agents or to any official involved in the investigation of the case." The prosecuting attorney has a continuing duty to supplement the State's discovery response if the prosecuting attorney later discovers or decides to use additional evidence. I.C.R. 16(j). Further, the prosecuting attorney

has "a duty of good faith in responding to discovery requests." *State v. Wilson*, 158 Idaho 585, 588, 349 P.3d 439, 442 (Ct. App. 2015).

If the State violates a disclosure requirement under I.C.R. 16(b)(6), the trial court has "considerable discretion under [I.C.R. 16(k)] to fashion an appropriate remedy." *Montgomery*, 163 Idaho at 45, 408 P.3d at 43. For example, the trial court may impose sanctions including, in appropriate circumstances, the exclusion of a witness. *Id.* "Sanctions serve the dual purposes of encouraging compliance with discovery and punishing misconduct." *Wilson*, 158 Idaho at 588, 349 P.3d at 442. A sanction for a discovery violation is effective if it obviates any prejudice to the defense. *Id.*

Whether to impose a sanction or the choice of the appropriate sanction is within the trial court's discretion. *Id.* In determining whether a trial court abused its discretion by not excluding undisclosed testimony, this Court considers whether the State's discovery violation prejudiced the defendant's preparation or presentation of his defense preventing him from receiving his constitutionally guaranteed fair trial. *State v. Allen*, 145 Idaho 183, 186, 177 P.3d 397, 400 (Ct. App. 2008). Examples of such prejudice include that the late disclosure hampered the defendant's ability to meet the evidence at trial, had a deleterious effect on his trial strategy, or deprived him of the opportunity to raise a valid challenge to the admissibility of the evidence. *Id.* Also, when the Court reviews a trial court's discretionary decision, it conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

On appeal, Scovill argues the district court failed to exercise reason by concluding that "the video speaks for itself" and that "[Albright's] testimony about what happened could not impact how the jury would view the video." Scovill's argument relates to the court's repeated statements during trial that the video showed what happened between Scovill and Albright at the emergency room door. For example, when denying Scovill's motion to strike Albright's testimony, the court reasoned:

> The problem is, is the video speaks for itself. The video trumps everything. I mean, regardless of what this witness or any other witness says about how they perceived the incident, the video speaks for itself. And so that--I think you're probably right, that's a change in testimony; but I don't think it's material because

6

we do have *the video to show exactly what happened* regardless of what this or any other witness says.

(Emphasis added.)

Similarly, the district court expressed its opinion that the video was conclusive when it granted Scovill's motion to strike the receptionist's testimony about the contact between Scovill and Albright at the emergency room door:

I don't know that we gain anything by having witnesses come in and telling us what they saw or what they think they saw when *the video is pretty conclusive of what happened*.

(Emphasis added.) The court even conveyed its opinion about the video's probative value to the jury. When instructing the jury to disregard the receptionist's testimony about the contact between Scovill and Albright at the emergency room door, the court stated "there's going to be other testimony and video evidence that's going to be more probative of that."

We agree with Scovill that the district court did not reach its decision to deny his motion to strike Albright's changed testimony through an exercise of reason. *See Herrera*, 164 Idaho at 270, 429 P.3d at 158 (requiring decision to be reached through exercise of reason). Instead, the court based its decision on the court's own opinion that the video conclusively showed "exactly what happened." Contrary to the court's statements, however, the video does not conclusively establish Scovill actually hit Albright's chest before Albright wrapped his arms around Scovill. Whether Scovill's or Albright's motion resulted in the first contact is unclear because Scovill's body blocks the video's view of Albright at the precise moment they come into contact with each other. The video screenshot is not conclusive either. Indeed, even the State concedes on appeal that "the video does not definitively depict" "Scovill making contact with Albright's chest with his torso prior to Albright taking Scovill to the ground."

Additionally, we conclude the district court did not act consistently under I.C.R. 16 when sanctioning the State for failing to disclose the prosecution witnesses' statements. The court acknowledged its obligation to act consistently. Specifically, the court stated when it struck the receptionist's undisclosed testimony that "if I'm going to be consistent, I've got to make the same ruling [to exclude] other witnesses who are going to offer testimony about what they saw or what they think they saw [if that] hasn't been disclosed." Similarly, the court later stated before Albright testified that if Albright's trial testimony changed from his preliminary hearing testimony, the court would strike the changed testimony. Then, the court repeatedly

7

acknowledged Albright's trial testimony had changed since the preliminary hearing. Nevertheless, the court denied Scovill's motion to strike Albright's changed testimony. This inconsistency in applying the legal standards under I.C.R. 16 was an abuse of discretion. *See Herrera*, 164 Idaho at 270, 429 P.3d at 158 (requiring consistent application of legal standards).

Further, we conclude Albright's change in testimony prejudiced Scovill at trial. Before Albright testified at trial, the court acknowledged that a change in his testimony would prejudice Scovill. Specifically, the court stated:

> The whole point of discovery is to let the parties know in advance what the witnesses are going to testify to so there's no surprise at the time of trial. We have a preliminary hearing where [Albright] testified. That testimony is a matter of record at this point. We have a videotape. That video is what it is. To the extent [Albright's] testimony would be something different than the video, that would be problematic. That would be subject to being stricken. If the testimony's different than both the video and the preliminary hearing, then that would be a problem to the extent it was not disclosed.
>     So I don't see prejudice to the Defense on this. I don't think there's an--I mean, once you disclose the nature of the testimony, it's disclosed. You know what it is. If [Albright's testimony] changes, yeah, then there is a duty to supplement the disclosures to show the change in testimony. But, I don't see anything here that shows that there would be a change in testimony from [Albright] from what the video would show or what he had previously testified to.
>     . . . .
>     . . . [I]f he's saying something that happened outside of the video that is different from the preliminary hearing, to me that is a problem.

In other words, the district court concluded a change in Albright's preliminary hearing testimony would be a problematic surprise at trial for Scovill, which would require the court to strike Albright's changed testimony to avoid prejudice.

Thereafter, Albright changed his testimony from asserting he did not have "to wait to be punched" before using force against Scovill to asserting Albright "wrapped [Scovill] up" only *after* Scovill hit Albright in the chest. This change in testimony was both inconsistent with Albright's preliminary hearing testimony and described something more than what the video shows. As a result, the change in testimony prejudiced Scovill because the testimony both "fill[ed] the gap of what the video simply [did] not show"--as Scovill correctly notes--and also allowed the State to portray Scovill as the initial aggressor for the first time at trial. This surprise testimony necessarily had a deleterious effect on Scovill's trial strategy and hampered his ability to meet Albright's changed testimony at trial. *See Allen*, 145 Idaho at 186, 177 P.3d at 400 (noting examples of prejudice).

8

On appeal, the State does not dispute either that Albright's testimony changed or that the State failed to disclose this change. Instead, the State argues the difference between Albright's preliminary hearing testimony and his trial testimony is "not so stark" as to cause Scovill prejudice. The distinction in Albright's preliminary hearing testimony and his trial testimony, however, became pivotal once the prosecuting attorney agreed to limit her closing argument exclusively to the alleged battery at the emergency room door and to forego any argument about Scovill's contact with Albright on the ground. During closing argument, the prosecuting attorney argued only that "[Scovill] hit [Albright] in the chest with [Scovill's] upper body, and at that point [Albright] wrapped his arms around [Scovill] and took him to the ground." Further, the prosecuting attorney relied on the video screenshot which Albright had testified showed Scovill hitting Albright in the chest with Scovill's shoulder before Albright "wrapped him up." Because the State focused the jury's attention exclusively on the battery at the emergency room door, the State's failure to disclose Albright's statement about this contact prejudiced Scovill in the preparation and presentation of his defense. *Id.* (noting examples of prejudice).

We also reject the State's argument that Scovill failed to show a violation of I.C.R. 16(b)(6) because he "never established what statements Albright actually made to the prosecutor." The record shows the prosecuting attorney was aware that Albright's recollection of his encounter with Scovill had changed after the preliminary hearing. Before Albright's direct testimony at trial, he admitted meeting with the prosecuting attorney on at least two occasions and expressly acknowledged his discussions with her during those meetings gave rise, at least in part, to a recollection different than his preliminary hearing testimony:

> [Court]:     [I]n your discussions with any representative of the State, did that result in any memories or recollections different than what you testified to in your preliminary hearing?
> . . . .
> [Albright]:  *I would have to say yes.* But the--the video has been posted on the Internet for--since our preliminary hearing, and I viewed the video multiple times since the preliminary hearing, and the majority of my recollection becoming clear has been the result of watching that video as it was posted on the Internet. *And that memory becoming clearer has been, I guess, strengthened in my conversations with the prosecutor.*

(Emphasis added). Further, the prosecuting attorney never asserted that Albright's testimony that Scovill hit Albright at the emergency room door surprised her; rather, she simply argued

9

Albright had not changed his testimony--a position with which we disagree, as did the district court.

In summary, we conclude the State violated I.C.R. 16(b)(6) by not disclosing Albright's different recollection, which he formed during his pretrial, post-preliminary hearing discussions with the prosecuting attorney and which resulted in Albright changing his preliminary hearing testimony to testify at trial that Scovill hit him at the emergency room door before Albright wrapped his arms around Scovill. Further, we conclude this change in testimony surprised Scovill at trial and thereby prejudiced him. Finally, we conclude the district court abused its discretion by failing to exercise reason when concluding the video showed "exactly what happened" and by not consistently sanctioning the State for failing to disclose the prosecution witnesses' statements under I.C.R. 16.

**B.      Failure to Strike Albright's Trial Testimony Was Not Harmless Error**

The district court's refusal to strike Albright's trial testimony was not harmless error. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). The Idaho Supreme Court clarified the harmless error standard for an objected-to, non-constitutionally-based error in *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020). "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Id.* at 674, 462 P.3d at 1138 (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.*

In this case, the error was not minimal in relation to the probative force of the record establishing guilt. During closing argument, the prosecuting attorney took the singular position that the battery occurred when Scovill hit Albright at the emergency room door. Other than the inconclusive video and screenshot of that contact, the only evidence of whether Scovill actually hit Albright at the emergency room door before Albright wrapped his arms around Scovill was Albright's trial testimony, which the district court declined to strike despite the State's violation of I.C.R. 16(b)(6). Accordingly, we cannot conclude Albright's undisclosed testimony did not

10

contribute to the jury's guilty verdict. As a result, we hold that the district court's refusal to strike this testimony was not harmless.

## C.    Order Excluding Evidence Regarding Scovill's Mental Illness

Because we hold that the district court erred by failing to strike Albright's undisclosed trial testimony and that this error was not harmless, we need not address Scovill's challenge to the court's order granting the State's motion in limine. Recognizing remand may result in a new trial, however, we briefly address Scovill's challenge. *See, e.g.*, *State v. Joy*, 155 Idaho 1, 12, 304 P.3d 276, 287 (2013) (providing guidance on remand).

During discovery, Scovill disclosed his medical records and two medical doctors as potential witnesses. These disclosures prompted the State to move in limine to exclude the presentation of "any evidence regarding mental illness, diagnosis, or conditions at trial." The State relied on I.C. § 18-207 which provides:

> Mental condition shall not be a defense to any charge of criminal conduct [except] [n]othing herein is intended to prevent the admission of expert evidence on the issue of any state of mind which is an element of the offense, subject to the rules of evidence.

I.C. § 18-207(1), (3). Based on this statute, the State argued that the charge of battery on a health-care worker, I.C. § 18-915C, which relies on the definition of battery in I.C. § 18-903, is a general intent crime, and as a result, evidence of Scovill's medical condition is inadmissible under I.C. § 18-207(1).

The district court agreed and granted the State's motion entering a written order ruling that Scovill's "[m]edical records and medical history" are not relevant and that the testimony of Scovill's father or anyone else "as to the circumstances by which [Scovill] was transported to the emergency room" is not relevant. Additionally, the court stated in its order that "it will likely be obvious to the jurors through the testimony of the security officers that [Scovill] was having mental health issues." During the hearing on the motion, however, the court also stated it would allow some background information about "what happened and what brought [Scovill] to the hospital."

We agree that a charge of battery on a health-care worker, I.C. § 18-915C, is a general intent crime and that evidence of Scovill's medical records and history is irrelevant under I.C. § 18-207(1). *See, e.g.*, *State v. Billings*, 137 Idaho 827, 830, 54 P.3d 470, 473 (Ct. App. 2002) (noting intent is not intent to commit crime but to knowingly perform act). The district

11

court's prediction that Scovill's mental health issues "will likely be obvious to the jurors" based on the security officers' testimony, however, did not prove to be correct at trial. To the contrary, Albright testified he thought Scovill was under the influence of methamphetamine in the emergency room. To cure any prejudice from this testimony, the court gave the jury a curative instruction that Scovill was not under the influence of methamphetamine during the incident.

Generally, "a jury is entitled to have a full and complete description of the events surrounding the commission of a crime." *State v. Sanchez*, 147 Idaho 521, 528, 211 P.3d 130, 137 (Ct. App. 2009). Accordingly, in the event of a new trial on remand, some limited background evidence about why Scovill was in the emergency room is admissible. For example, that Scovill was not under the influence of an illegal substance but may have been having an adverse reaction to prescribed medication he was taking for his mental health condition is admissible.

### III.

### CONCLUSION

We hold that the district court abused its discretion by not striking that portion of Albright's trial testimony which was inconsistent with his preliminary hearing testimony and which the State failed to disclose in response to Scovill's written discovery request under I.C.R. 16(b)(6). Further, we hold that this error was not harmless. Accordingly, we vacate Scovill's judgment of conviction and remand the case.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.